**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tracey Donell WHITE, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clarence JACKSON, Defendant–Appellant.**

Nos. 88–5613, 88–5614.

United States Court of Appeals, Fourth Circuit.

Argued April 14, 1989.

Decided May 22, 1989.

James Riley Parish (Parish, Cooke & Weeks on brief); Ronald D. McSwain, Fayetteville, N.C., for defendants-appellants.

Thomas Ernest Booth, Arlington, Va., (Margaret P. Currin, U.S. Atty., R. Daniel Boyce, Asst. U.S. Atty., Raleigh, N.C., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and WIDENER and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

Tracey Donell White appeals the sentence imposed after he entered guilty pleas to possession with intent to distribute cocaine and possession of a firearm during the commission of a drug trafficking offense. 21 U.S.C.A. § 841(a)(1) (West 1981); 18 U.S.C.A. § 2 (West 1969); 18 U.S.C.A. § 924(c)(1) (West Supp.1989). Clarence Jackson appeals the sentence imposed after he entered a plea of guilty to possession with intent to distribute cocaine. 21 U.S.C.A. § 841(a)(1); 18 U.S.C.A. § 2.

Since the offenses were committed after November 1, 1987, the sentences were governed by the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, *et seq.* (West 1985 & Supp.1989), and the sentencing guidelines promulgated by the United States Sentencing Commission. These appeals present several issues, including whether White's guideline sentencing

range should have been reduced by 2 levels for acceptance of responsibility under Guideline § 3E1.1(a) and whether Jackson's guideline sentencing range was properly enhanced 2 levels for possession of a firearm during the commission of an offense under Guideline § 2D1.1(b)(1). Also at issue is whether Jackson should have been sentenced as a minor participant under Guideline § 3B1.2(b). We affirm.

## I.

In January 1988 law enforcement officers in Fayetteville, North Carolina, received information that an individual (Jackson) arriving on an Amtrak train would be transporting cocaine. The information provided to the officers included the fact that another individual (White) would meet the traveler at the train station. The officers, who were given a description of White and his automobile, established surveillance at the train station at midnight on January 27, 1988. A short time later an automobile matching the description arrived at the station. White, who was driving the vehicle, parked at the farthest end of the parking lot for approximately five minutes and then circled the lot with the car headlights off. When the train arrived, White stopped the vehicle near the passenger ramp. He then exited the car and greeted Jackson, who had just disembarked the train. After the two men shook hands, they entered the vehicle and began to exit the parking lot. The officers stopped the vehicle, arrested and searched the two men and the vehicle. Over 300 grams of cocaine were discovered in Jackson's jacket pocket. The search of the vehicle revealed a loaded .25 caliber pistol under the driver's seat, which had been occupied by White.

## II.

White and Jackson were subsequently charged in a four-count indictment returned on February 23, 1988. The first count charged them with conspiring to traffic in cocaine in violation of 21 U.S.C.A. § 846 (West 1981 & Supp.1989), and the second count charged Jackson with inter-

state travel with intent to carry on a drug trafficking business in violation of 18 U.S.C.A. § 1952 (West 1984 & Supp.1989). Count 3 charged White and Jackson with possession with intent to distribute cocaine in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2, and count 4 charged both men with possession of a firearm during commission of a drug trafficking offense in violation of 18 U.S.C.A. § 924(c)(1). Pursuant to plea agreements, White pleaded guilty to counts 3 and 4 and Jackson pleaded guilty to count 3. White received a sentence of 41 months on the drug charge and a 60–month mandatory consecutive sentence on the firearm charge. Jackson received a 44–month sentence.

### A.

The guidelines hold both defendants accountable for the 307 grams of cocaine physically possessed by Jackson. Guideline § 1B1.3(a)(1). Thus, the presentence report correctly provided that under Guideline § 2D1.1 White's base offense level was 22.[1] It further recommended that 2 levels should be deducted for White's acceptance of responsibility under Guideline § 3E1.1(a). Since White was being sentenced under 18 U.S.C.A. § 924(c)(1) which requires a mandatory 60–month consecutive sentence, the 2-level enhancement of Guideline § 2D1.1(b) for possession of a dangerous weapon did not apply. Guideline § 3D1.2, Application Note 1.

Based on information that White had attempted to influence the testimony of a potential witness, the government argued to the probation officer writing the presentence report that White's offense level should be increased by 2 through application of Guideline § 3C1.1 (Willfully Obstructing or Impeding Proceedings). The probation officer declined to amend the presentence report "due to inability to confer with investigators due to time constraints."

At the sentencing hearing, the government presented evidence of the alleged obstruction through the testimony of the investigating officer. The court refused to

---

**1.** White's criminal history category of I was also   correctly determined.

apply the 2-level enhancement for obstruction, finding that "its failure to be included in the presentence report and the presentence conference is a sufficient procedural ground for me not to consider it."

The court then raised the issue of whether it should accept the probation officer's recommendation to apply the 2-level reduction for acceptance of responsibility. After hearing from both parties, the court refused to apply the reduction. Thus, instead of an offense level of 20 and guideline range of 33–41 months as recommended in the presentence report, White's offense level was 22 with a resulting guideline range of 41–51 months. In addition to a 60–month consecutive sentence under 18 U.S.C.A. § 924(c)(1), the court sentenced White to 41 months, the low end of the range for offense level 22, which was the same as the high end of the range for offense level 20.

### B.

The presentence report on Jackson provided that his guideline range was 41–51 months, based on a total offense level of 22.[2] Jackson's total offense level was determined by starting with a base offense level of 22 for possession of 307 grams of cocaine, Guideline § 2D1.1(a)(3), with an increase of 2 levels for possession of a firearm during the commission of the offense, Guideline § 2D1.1(b), and with a reduction of 2 levels for acceptance of responsibility, Guideline § 3E1.1(a). The presentence report also stated that the investigating officer considered Jackson to be a "messenger" and less culpable than White.

At the sentencing hearing Jackson contended that the 2-level increase for possession of a firearm was improper because there was no evidence that he was possessing the pistol which was discovered under the seat of the vehicle. Jackson also argued that he was entitled to a 2-level reduction as a minor participant in the offense, Guideline § 3B1.2(b). He therefore asserted that this, coupled with acceptance of responsibility, entitled him to a sentencing range of 27–33 months, based on a total

offense level of 18. The district court rejected his arguments and sentenced him to 44 months.

### III.

Guideline § 3E1.1(a) provides for a 2-level reduction of the offense level for acceptance of responsibility "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Appellate review of a district court's determination of whether to reduce a defendant's offense level for acceptance of responsibility is governed by 18 U.S.C.A. § 3742(e), which provides:

> **(e) Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—
>
> (1) was imposed in violation of law;
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines;
>
> (3) is outside the applicable guideline range, and is unreasonable, having regard for—
>
> > (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
> >
> > (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
>
> (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.
>
> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

Application Note 5 of the Commentary to Guideline § 3E1.1 explains that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and that his determination "is

---

**2.** Jackson's criminal history category was also Category I.

entitled to great deference on review and should not be disturbed unless it is without foundation." White contends that the "great deference" instruction conflicts with the "unreasonable" standard of section 3742(e)(3).[3] This contention is without merit for subsection (e)(3) addresses the review of sentences imposed outside the appropriate guideline ranges and has no application to cases such as this, where the district court does not depart from the guideline range. *See United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir.1989). In contrast, the issue presented here is whether the guidelines were correctly applied, which is reviewed under section 3742(e)(2), aided by the last sentence of that section. In *Daughtrey*, this court explained that the amount of deference due under section 3742(e) will vary according to the circumstances of each case. Where an issue is primarily a factual one, the district court resolution of the issue will not be disturbed unless clearly erroneous.

██ Whether to apply Guideline § 3E1.1 is clearly a factual issue and thus reviewable under a clearly erroneous standard. *United States v. Franco–Torres*, 869 F.2d 797, 799 (5th Cir.1989); *United States v. Spraggins*, 868 F.2d 1541, 1543 (11th Cir. 1989) (per curiam). This standard of review is consistent with section 3742(e), the policy statements issued by the Sentencing Commission, and with past sentencing practices. Previously, defendants who entered guilty pleas often received sentences lower than they would have received had they proceeded to trial and been convicted.[4] Recognizing the utility of this past practice, the guidelines were promulgated to continue it, albeit in a restricted form. They do not provide an automatic reduction for pleading guilty.[5] Instead, the decision was left to the sentencing judge, who is in

a unique position to carefully examine the particular circumstances of each case.

### IV.

White contends that the district court erred in refusing to apply the 2-level reduction for acceptance of responsibility based on several grounds. First, he argues that since the government had not disputed the probation officer's recommendation, he was not prepared to address the issue at the sentencing hearing. He next contends that since the district court refused to credit the government's evidence regarding the alleged obstruction enhancement, it erred in considering the same allegations when evaluating whether acceptance of responsibility applied. White also asserts that his guilty plea and promise to cooperate with law enforcement officers entitled him to the reduction.

### A.

White's assertion that he was not prepared to address the issue of whether an acceptance of responsibility reduction should be allowed is without merit. The district court decision on whether to apply Guideline § 3E1.1 is not controlled by the presentence report recommendation, nor is the district court required to apply it simply because the government did not specifically object to its proposed application. It may often be the case, as here, that the primary factors influencing the district court determination of whether to apply the acceptance of responsibility reduction occur at the sentencing hearing, after preparation of the presentence report.

██ Moreover, White was on notice that the evidence surrounding the alleged obstruction might be introduced. And al-

---

3. White incorrectly cites section 3742(d) as containing the "unreasonable" standard. Section 3742 was amended in November 1988 and former subsection (d) was redesignated subsection (e).

4. Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 48 (June 18, 1987).

5. Although the Sentencing Commission considered a proposal for an automatic discount for entering a guilty plea, it specifically rejected the proposal. *See* United States Sentencing Commission Public Hearing on Plea Agreements in Washington, D.C., 8, 16 (Sept. 23, 1986) (testimony of Professor Stephen J. Schulhofer, University of Chicago Law School).

though this evidence was not accepted for purposes of a 2-level increase for obstruction under Guideline § 3C1.1, it was appropriate for the district court to consider this evidence when assessing the applicability of the acceptance of responsibility guideline section.

### B.

White argues that his plea of guilty, together with his assertion that he would cooperate with law enforcement officers, entitled him to a reduction. However, Guideline § 3E1.1 and Application Note 3 of its Commentary state:

§ 3E1.1(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

#### Commentary

. . . .

3. A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section.

Thus, the guidelines unequivocally state that the act of pleading guilty will not require the district court to apply the reduction for acceptance of responsibility. And, here, other factors demonstrate that the district court did not clearly err in determining that White was not entitled to the reduction. The court noted that White "didn't agree to plead [guilty] until right at the end." Application Note 1(g) of the Commentary to Guideline § 3E1.1 lists as an appropriate consideration "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *See also United States v. Belgard*, 694 F.Supp. 1488, 1498 (D.Or.1988) ("[t]he timeliness factor is a useful indicator of whether a defendant's manifestation of acceptance of responsibility is meaningful").

■ Although the court elected not to increase the offense level on the ground that White obstructed justice under Guideline § 3C1.1, it did find that White "tried to get the witness to testify untruthfully."

The court also expressly found that White "was trying to be conniving and try[ing] to get himself out of the situation." Sentencing judges examining the possible application of the acceptance of responsibility reduction must necessarily make credibility determinations surrounding the testimony and statements of defendants they are sentencing, and these determinations will not be disturbed unless clearly erroneous. *See United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) (" 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area" due to its credibility determinations). The Commentary to Guideline § 3E1.1 provides a non-exhaustive list of acts a defendant may perform which could indicate acceptance of responsibility. But even where a defendant performs one or more of these acts, such as making voluntary restitution to a victim, a court may still reject application of this section. In the final analysis, it is the district judge who must evaluate the acts and statements of a defendant and the conclusion drawn after this evaluation should not be set aside unless clearly erroneous.

Importantly, the 41–month sentence imposed on White is at the bottom of the sentencing range for level 22, Criminal History Category I. This overlaps with the high end of the sentencing range for level 20 that would have been applicable had the district court applied the 2-level reduction for acceptance of responsibility. As recently stated by the Second Circuit, "disputes about applicable guidelines need not be resolved where the sentence falls within either of two arguably applicable guideline ranges and the same sentence would have been imposed under either guideline range." *United States v. Bermingham*, 855 F.2d 925, 931 (2d Cir.1988).

Here, although not explicitly stated, it appears that the district court sentenced at the low end of the sentencing range for level 22 due, in part, to the fact that the court refused to reduce the offense level to level 20 for acceptance of responsibility. Had the district judge stated that the sentence would have been the same regardless of which sentencing range had ultimately

been determined to be appropriate, review of whether acceptance of responsibility applied would have been unnecessary.

## V.

Guideline § 2D1.1(b)(1) allows for a 2-level increase in the base offense level "[i]f a firearm or other dangerous weapon was possessed during commission of the offense." Application Note 3 of the Commentary to this section states that "[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

■ Jackson contends that the court erred in enhancing his base offense level because he did not physically possess the weapon which was discovered under White's seat in the vehicle. In support of this argument, Jackson points out that he entered a guilty plea to aiding and abetting White in the drug offense, but that he did not plead guilty to conspiracy. Therefore, he contends that the government was forced to prove that he independently possessed the weapon.

Guideline § 1B1.3 establishes the conduct that is relevant for determination of the applicable guideline range. Included in the relevant factors are:

> all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

Guideline § 1B1.3(a)(1).

The district court did not err in applying Guideline § 2D1.1(b)(1) and enhancing Jackson's base offense level for the presence of the weapon. The weapon was present, Jackson and White were acting in concert, it was not improbable that the weapon was connected with the offense, and, under the circumstances of the case, it was fair to say that it was reasonably foreseeable to Jackson that his co-participant was in possession of a firearm. Therefore, under Guideline § 1B1.3(a)(1), Jackson is "otherwise accountable" for the weapon.

The facts surrounding the apprehension of Defendants are important. Jackson arrived at the train station after midnight, exited the train, greeted White and rode away with him. The pistol under the driver's seat was readily accessible to both. And, as Jackson conceded, he knew White personally and had been involved in at least one previous similar transaction with him. Finally, it is not unreasonable to recognize that weapons have become " 'tools of the trade' " in illegal narcotics operations. *United States v. Hinds*, 856 F.2d 438, 443 (1st Cir.1988) (quoting *United States v. Cresta*, 825 F.2d 538, 554 (1st Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988)). Therefore, although Jackson's guilty plea was based on an aiding and abetting charge and not on a conspiracy charge, the district court did not err in considering the possession of the weapon for sentencing purposes.

## VI.

■ Guideline § 3B1.2(b) provides that the base offense level may be reduced by 2 levels if the defendant is found to be a "minor participant" in the criminal activity. Jackson contends that he was entitled to this reduction. In support of this assertion, he points out that the investigating officer referred to him as merely a "messenger," while White was termed the "manager." Jackson argues that in light of the creation of a "hierarchy of culpability," he should have been given a 2-level reduction.

In *United States v. Daughtrey*, 874 F.2d 213, this court set forth the standard of review for questions involving application of the minimal and minor participant reductions. Where the question involves the "correctness of the district court's determination that [the defendant] was neither a

minimal nor a minor participant in the criminal activity," the district court's decision will not be disturbed unless clearly erroneous. *Id.* at 218.

Here, the district court did not clearly err in concluding that Jackson was not entitled to a reduction. The fact that law enforcement officers distinguished between the culpability of White and Jackson did not require the district court to apply a reduction for minor participation. As stated in *Daughtrey,* "while facts may be present which arguably distinguish one participant from another, the distinguishing facts [often] will not be relevant for sentencing purposes." *Id.* at 218. The district court determined that Jackson was not entitled to a reduction as a minor participant since the evidence established that he was involved in a prior similar drug transaction with White and was an indispensable participant in this one.

■ Contrary to Jackson's suggestion, the mere fact that he was acting as a drug courier does not automatically entitle him to a reduction under Guideline § 3B1.2. As recently stated by the Fifth Circuit, a determination of minimal or minor participant status "turns upon culpability, not courier status." *United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir.1989). In reaching this conclusion, the Fifth Circuit properly recognized that whether a drug courier is entitled to a downward adjustment depends on the particular facts surrounding his involvement. The court also refused to accept the proposition that all drug couriers are less culpable than other members of a drug organization, stating that:

> [C]ouriers are an indispensable part of drug dealing networks. Without somebody to take the drugs across the border, the drugs will never reach their illicit market. In addition, the mere fact that a defendant was apprehended while acting as a courier does not imply that the defendant is *only* a courier. The district judge need not accept the defendant's self-serving account of his role in the drug organization. Finally, even if the defendant were purely a courier having

no knowledge of the other aspects of the drug-dealing operation, the defendant might nonetheless be a highly culpable participant in the operation.

*Buenrostro,* 868 F.2d at 138. Here, the district court finding that Jackson was not entitled to a reduction as a minor participant is not clearly erroneous. In so holding we reject the position advanced by Jackson that a district court is bound by the characterization of law enforcement or probation officers regarding a defendant's role in the offense.

## VII.

In conclusion, we hold that the district court did not clearly err in refusing to reduce White's base offense level for acceptance of responsibility under Guideline § 3E1.1(a). We also hold that the court properly enhanced Jackson's offense level for possession of a firearm during the commission of an offense under Guideline § 2D1.1(b)(1) and did not clearly err in refusing to sentence him as a minor participant under Guideline § 3B1.2(b).

AFFIRMED.