**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas CUSACK, a/k/a T.C.,
Defendant–Appellant.**

**No. 89–5402.**

United States Court of Appeals,
Fourth Circuit.

Submitted Dec. 29, 1989.

Decided April 10, 1990.

---

Louis J. Ruch, McBride, Ruch & Gontram, Philadelphia, Pa., for defendant-appellant.

Michael W. Carey, U.S. Atty., Hunter P. Smith, Jr., Asst. U.S. Atty., Charleston, W.Va., for plaintiff-appellee.

Before HALL, PHILLIPS and SPROUSE, Circuit Judges.

**PER CURIAM:**

Thomas Cusack[1] appeals the sentence imposed by the district court after he pled guilty to one count of violating the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). Finding no error in the district court's sentence, we affirm.

**I**

On January 10, 1988, a federal grand jury in Charleston, West Virginia, returned an eighty-five count indictment charging Thomas Cusack and 28 other members of the Pagan Motorcycle Club with violations of federal racketeering, controlled substance, and firearms statutes. Count One charged Cusack with conducting the affairs of an enterprise, the Pagan Motorcycle Club, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (RICO); Count Two charged him with conspiracy to conduct the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) (RICO conspiracy); and Count Four charged him with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.

The indictment described the affairs of the Pagan Motorcycle Club as involving the unlawful transportation and distribution of controlled substances in West Virginia and elsewhere. Count One, which was incorporated by reference in the other counts, alleged that the Club's pattern of racketeering activity extended from January 1980 to the time of the indictment nine years later, and it described three predicate acts of racketeering activity: distributions of a quarter-pound of methamphetamine on two occasions—October 20, 1987, and November 26, 1987—and conspiracy to distribute methamphetamine. Count One further alleged that Cusack, as a member of the Mother Club Chapter of the Pagan Motorcycle Club, distributed methamphetamine to members of the club and others.

---

1. Though the indictment and the government's brief on appeal have spelled the last name "Cu-sak," we adopt the spelling in the appellant's brief.

On March 21, Cusack pled guilty to the RICO charge, and the government agreed to dismiss the RICO conspiracy and drug conspiracy charges. At the plea hearing, Cusack admitted to being a member of the motorcycle club and to dealing methamphetamine to Kenneth Blaine McMillion, a member and officer of the club, on the two occasions specified in the RICO charge. He denied, however, knowing that the motorcycle club regularly and generally engaged in drug trafficking. Because Cusack's admissions did not suffice as a factual basis for the court's acceptance of his guilty plea on the RICO charge, the government adduced substantial evidence from its own investigations of the motorcycle club's illegal drug trafficking and of the role of the club's hierarchy in the illegal activities. The court then accepted Cusack's plea.

The presentence report contained evidence of Cusack's other transactions in quarter-pounds of methaphetamine. Concluding that he had dealt in one and one-quarter pounds of the drug, the report set his base offense level at 26, but recommended a four-level enhancement for role in the offense, pursuant to Federal Sentencing Guideline § 3B1.1. The report stated that Cusack had been evasive and uncooperative in the investigation, and accordingly it recommended that he not receive a Guideline § 3E1.1 reduction of offense level for acceptance of responsibility. At sentencing, the court found that Cusack had dealt in one pound of methamphetamine as "relevant conduct" under § 1B1.3, excluding one uncharged quarter-pound transaction that the government conceded it could not substantiate. The court accepted Cusack's argument that he should not receive the four-level role-in-the-offense enhancement recommended in the presentence report, but rejected his request for a reduction based on acceptance of responsibility. Having set his offense level at 26 and Criminal History category at I, the court found the applicable sentencing range to be 63–78 months and sentenced Cusack to 78 months.

## II

Cusack assigns two errors in the district court's sentencing. First, he challenges the denial of the requested reduction in his offense level for acceptance of responsibility, contending as he must that the findings of fact underlying that ruling were clearly erroneous. Second, he challenges the inclusion of two uncharged methamphetamine transactions in his relevant conduct for sentencing, arguing that their consideration violated the *ex post facto* clause of the Constitution and was in any event an incorrect application of the Guidelines. We address these assignments of error in turn.

## A

Under Guideline § 3E1.1(a), a court may reduce by two levels the offense level of a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Subsection (c) of that Guideline states, however, that "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right." As we have recognized, the trial judge is best suited to determine whether a defendant is entitled to a § 3E1.1 reduction: "Application Note 5 of the Commentary to Guideline § 3E1.1 explains that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility,' and that his determination 'is entitled to great deference on review and should not be disturbed unless it is without foundation.'" *United States v. White*, 875 F.2d 427, 430–31 (4th Cir.1989). As the evaluation of a defendant's acceptance of responsibility is primarily a factual question, due deference for the sentencing court requires an appellate court to accept its findings unless they are clearly erroneous. *See* 18 U.S.C. § 3742(e); *United States v. Daughtrey*, 874 F.2d 213 (4th Cir.1989); *White*, 875 F.2d at 431.

█ In this case, the district court's denial of the § 3E1.1 acceptance of responsibility reduction had a foundation in fact and was not clearly erroneous. The commentary to § 3E1.1 lists some of the factors

relevant to whether a defendant should receive the reduction. Among the many mentioned are voluntary withdrawal from a criminal association and voluntary and truthful admission of offense and related conduct. Cusack withdrew from the Pagan Motorcycle Club only after he was arrested and ordered to do so as a condition of pretrial release—his presentence report discloses that he told a Philadelphia probation officer he was no longer a member of the Pagans because "the Feds took away my colors." Furthermore, Cusack refused at his sentencing hearing to discuss both some of his RICO offense conduct, *e.g.*, he denied knowledge of broader illegal activities of the motorcycle club, and some of his related conduct, *e.g.*, the prior methamphetamine transactions noted as "relevant conduct" in his presentence report. In addition, the court could have credited statements in the presentence report that Cusack had not been truthful or candid with his probation officer. In sum, the court's finding that Cusack had not accepted responsibility, and was therefore not entitled to a sentence reduction on that ground, was neither "without foundation" nor "clearly erroneous."

### B

■ Cusack next challenges the computation of his base offense level. He argues first that the computation violated the *ex post facto* clause of the Constitution [2] because it counted drug transactions that occurred before the effective date of the Sentencing Guidelines. We disagree. Cusack pled guilty to a RICO offense that spanned a period of time from 1980 to 1989. As other circuits have held, the application of the Guidelines to offenses whose conduct occurs both before and after the Guidelines' November 1, 1987, effective date does not violate the *ex post facto* clause. *See United States v. Boyd*, 885 F.2d 246 (5th Cir.1989); *United States v. Walker*, 885 F.2d 1353 (8th Cir.1989). The Sentencing Guidelines did not become law *after* the commission of the RICO crime, but instead took effect during the life of

the continuing offense. Nor did it violate the *ex post facto* clause for the sentencing court to have considered pre-November 1, 1987, conduct as "relevant conduct" under § 1B1.3. As there was no *ex post facto* violation in applying the Guidelines generally, the particular Guideline that takes account of all "relevant conduct" in setting the offense level, § 1B1.3, does not violate the clause merely because it may have the effect of stiffening a penalty for a current charged offense by reference to uncharged pre-Guidelines conduct. *See United States v. Ykema*, 887 F.2d 697 (6th Cir.1989); *United States v. Allen*, 886 F.2d 143 (8th Cir.1989).

■ Cusack's second challenge to the computation of his base offense level is that the court misapplied the Guidelines in counting the two uncharged quarter-pound methamphetamine transactions. He contends that because the two predicate acts in the count of conviction occurred before the January 15, 1988, amendments to Guidelines §§ 1B1.2 and 1B1.3, the court should have applied those Guidelines as they read before those amendments. He then argues that the unamended Guidelines did not permit consideration of uncharged relevant conduct in setting the offense level, as § 1B1.3 now unambiguously does permit. Thus, he contends, only the two admitted transactions should have been counted in arriving at his offense level.

While we doubt that § 1B1.3 had a different meaning before the January 15, 1988, amendments, *see Guidelines Manual*, app. C., amendment 3, p. C.2 (Nov. 1989), we need say no more here than that the Guidelines as amended applied to this offense. Cusack was not convicted of two specific instances of distributing drugs; he was convicted of violating RICO from January 1980 to the issuance of the indictment in January 1989. In setting the base level offense of 26 by including the two uncharged methamphetamine transactions, the district court was following Guideline § 1B1.3(a)(2), which directs it to consider "all such acts and omissions that were part of the same course of conduct or common

---

**2.** "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.

scheme or plan as the offense of conviction."

### III

Accordingly, for the reasons stated above, we affirm the district court's sentencing of Cusack. We dispense with oral argument because the facts and legal contentions are adequately developed in the materials before the court, and oral argument would not aid in the decisional process.

AFFIRMED.