928 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Deborah L. OVERTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert A. MANUEL, Defendant-Appellant.
 Nos. 90-5201, 90-5527.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 23, 1991.
Decided March 18, 1991.
As Amended May 6, 1991.
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden, II, Chief District Judge. (CR-89-166-2)
 Gary A. Collias, McIntyre, Haviland & Jordan, Charleston, Jane Charnock, Charnock & Charnock, Charleston, W.Va., for appellants.
 Michael W. Carey, United States Attorney, J. Kirk Brandfass, Assistant United States Attorney, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and WILKINSON and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Deborah L. Overton and Robert A. Manuel were each convicted upon pleading guilty of possession with intent to distribute 22.95 grams of crack cocaine. Both were sentenced to 121 months imprisonment. Overton and Manuel appeal their sentences asserting that the district court erred in imposing their sentences under the Sentencing Guidelines. Finding no error, we affirm.
 
 I.
 
 2
 On July 27, 1989, law enforcement officers were conducting an investigation into the distribution of crack cocaine in Charleston, West Virginia. The investigation led the officers to Teddy Lacey and James Harris, whom they arrested for possession and distribution of crack cocaine. Lacey and Harris had been staying at Cutlip's Motel. They informed the officers that they had received the crack cocaine from room 112 of the motel. They also told the officers that there was more cocaine in room 112. Based upon this information, the officers began surveillance of the room and began the process of obtaining a search warrant for the room.
 
 
 3
 Before the warrant was obtained, Manuel, Overton, and Charles Harris returned to room 112. When they saw the officers securing room 112, Manuel and Charles Harris tried to flee. They were caught and arrested. Overton did not try to flee, but she was arrested also. Manuel and Overton had been staying in room 112. Each had brought crack cocaine from Philadelphia, Pennsylvania to distribute in Charleston.
 
 
 4
 The officers searched room 112 pursuant to a search warrant. They found about 13 grams of crack cocaine. Subsequently, a maid discovered an additional quantity of about 9 grams of crack cocaine hidden in a lamp in the room. Thus, the total amount of cocaine seized from room 112 was 22.95 grams.
 
 
 5
 While transporting Overton to the police station, the officer driving the police car noticed Overton making movements indicating that she was trying to hide something. Once they arrived at the police station, an officer searched the back seat of the police car and found a loaded .25 caliber pistol where Overton had been sitting.
 
 
 6
 Overton and Manuel were charged in an indictment with the following offenses. Count One charged Overton, Manuel, and other defendants with conspiracy to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Count Two charged Manuel with aiding and abetting and possession with intent to distribute 5.66 grams of crack cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Count Four charged Manuel and Overton with possession with intent to distribute approximately 22.95 grams of crack cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.
 
 
 7
 Both Overton and Manuel entered into plea agreements with the United States. Manuel and Overton each agreed to plead guilty to Count Four in exchange for use immunity from further prosecution and a dismissal of the other counts in the indictment against them. On October 30, 1989, Overton and Manuel entered pleas of guilty to Count Four in the district court.
 
 
 8
 During the factual basis phase of the plea hearing, Overton admitted that she brought 8 grams of cocaine to Charleston to sell. Manuel admitted to bringing 13 grams of cocaine to Charleston to sell. The presentence report attributed to both Manuel and Overton 22.95 grams of cocaine, the amount which each had pled guilty to possessing.
 
 
 9
 On November 30, 1989, Overton was released on bond to assist law enforcement agents in a drug investigation in Philadelphia. In February 1990, Overton did assist the authorities there. However in March, the agents had difficulty in locating Overton. By April, the agents had determined that they would arrest Overton if they found her based upon their inability to locate her. On May 24, 1990, Overton was arrested in Hartford, Connecticut. Police there were executing a search warrant at a residence, and Overton pointed a loaded sawed-off shotgun at them. Overton was charged with attempted assault, possession with intent to sell cocaine, and possession of a sawed-off shotgun. These charges were later dismissed.
 
 
 10
 On November 30, 1989, Manuel was also released on bond. Thereafter, he failed to appear for his sentencing hearing on January 16, 1990. He was arrested on May 25, 1990 and had in his possession 50 vials of crack cocaine at that time.
 
 
 11
 On July 3, 1990, Overton's sentencing hearing was held. She objected at that time to the presentence report's calculation that 22.95 grams were attributed to her. The district court found that Overton had pled guilty to possessing 22.95 grams and that 22.95 grams had been found in her motel room. Therefore, the court concluded that 22.95 grams were properly attributed to her.
 
 
 12
 Overton was given a two-level upward adjustment under Sec. 2D1.1(b)(1) of the Guidelines for her possession of a firearm during the commission of a controlled substance offense. She objected to this increase because of the facts surrounding her arrest. The district court found that the adjustment was proper under Sec. 2D1.1(b)(1).
 
 
 13
 Finally, Overton did not receive a two-level downward adjustment for acceptance of responsibility. She asserted that she should have received the adjustment based upon her guilty plea and her assistance to the government in Philadelphia. The district court found that Overton had not accepted responsibility in light of her criminal conduct while on bond, despite her assistance to the Philadelphia authorities. Based upon the above rulings, Overton's guideline range was 97-121 months. The district court sentenced Overton to 121 months to be followed by a period of five years of supervised release. Overton appeals her sentence.
 
 
 14
 Manuel was sentenced at a hearing held on August 13, 1990. He also objected to the presentence report's attributing 22.95 grams of cocaine to him. The district court held that the full amount was properly attributed to him because he pled guilty to possessing 22.95 grams, and that amount of cocaine was found in his motel room.
 
 
 15
 Manuel received two criminal history points under Sec. 4A1.1 of the Guidelines because he was on probation at the time he committed the offenses in this case. He objected to this calculation because he was "unsupervised" at the time and did not know that he was on probation. The district court found that the calculation was correct.
 
 
 16
 As a result of the above ruling, Manuel had a guideline range of 97-121 months. The district court sentenced him to 121 months imprisonment to be followed by four years of supervised release. Manuel appeals his sentence.
 
 II.
 
 17
 Overton appeals her sentence based on several grounds. First, she asserts that the district court erred when it increased her offense level by two levels because she possessed a gun. She asserts that the circumstances surrounding her arrest are significant and show that the weapon was not connected to the offense. Overton points to the fact that she was returning from a shopping trip in Charleston when she ran into the police officers, and that she did not enter room 112 prior to her arrest. Thus, she asserts that it was not shown that she possessed the gun during the commission of the drug offense in this case.
 
 
 18
 Section 2D1.1(b)(1) of the Guidelines provides: "If a dangerous weapon (including a firearm) was possessed during commission of the [drug] offense, increase by 2 levels." Application Note 3 of the Commentary to Sec. 2D1.1 explains the rationale for the increase:
 
 
 19
 The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.
 
 
 20
 The district court determined that Overton did possess the gun during the commission of the drug offense. "The determination of whether a firearm was present in the sense that it justified enhancement is a factual determination subject to clearly erroneous review." United States v. Apple, 915 F.2d 899, 914 (4th Cir.1990); United States v. Moreno, 899 F.2d 465 (6th Cir.1990).
 
 
 21
 In a case factually similar to the present case, the Sixth Circuit found that a weapon found in a police car in the area where the defendant had been sitting was possessed during the commission of the drug offense for purposes of Sec. 2D1.1. Moreno, 899 F.2d at 470-71. There, the gun was found under the seat of the police car in which the defendant had been riding after his arrest. The defendant was convicted of conspiracy to distribute or possession with intent to distribute 500 grams of cocaine. The district court applied the two-level enhancement of Sec. 2D1.1, and the Sixth Circuit affirmed. Id.
 
 
 22
 In United States v. White, 875 F.2d 427 (4th Cir.1989), this court upheld the application of the two-level enhancement under 2D1.1. The facts there showed that a firearm was found under the seat of a car in which the two defendants were transporting cocaine. Defendant Jackson argued that he did not know that the gun was there, and that he did not possess the gun during the commission of the offense. This court rejected that argument, stating:
 
 
 23
 The district court did not err in applying Guideline Sec. 2D1.1(b)(1) and enhancing Jackson's base offense level for the presence of the weapon. The weapon was present, Jackson and White were acting in concert, it was not improbable that the weapon was connected with the offense, and, under the circumstances of this case, it was fair to say that it was reasonably foreseeable to Jackson that his co-participant was in possession of a firearm.... Finally, it is not unreasonable to recognize that weapons have become " 'tools of the trade' " in illegal narcotics operations.
 
 
 24
 White, 875 F.2d at 433 (quoting United States v. Hinds, 856 F.2d 438, 443 (1st Cir.1988)).
 
 
 25
 The facts in this case, like those in White and Moreno, show that it was not improbable that Overton's gun was connected with the drug offense in this case. The drug offense did not just occur at the moment Overton was arrested, as she seems to argue. On the contrary, she possessed cocaine in Room 112 with intent to distribute it for an unknown amount of time. While she possessed the cocaine, she also possessed a weapon. Therefore, it is immaterial that she did not enter room 112 immediately before her arrest. The facts show that it was probable, not improbable, that Overton possessed the weapon in connection with the drug offense in this case. The district court's application of Sec. 2D1.1 under these facts was proper.
 
 
 26
 Overton next challenges her sentence on the ground that the district court erred in attributing the total 22.95 grams seized in room 112 to her for purposes of sentencing. Overton argues that she only possessed 8 grams of cocaine, and that she is not responsible for the amount which Manuel had. This contention is without merit.
 
 
 27
 First, as the district court noted, Overton pled guilty to possessing 22.95 grams of cocaine. She cannot now come before this court and claim that she really only possessed 8 grams, for she was convicted upon her own guilty plea of possessing 22.95 grams.
 
 
 28
 Second, even if Overton had pled guilty to possessing only 8 grams, she could have been held accountable for the entire 22.95 grams. Overton admitted that she travelled with Manuel from Philadelphia to Charleston and that each possessed cocaine and intended to distribute it there. Section 1B1.3 provides that the defendant is responsible for "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." The Background Commentary to Sec. 1B1.3 states that
 
 
 29
 in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.
 
 
 30
 Sec. 1B1.3(a)(2) comment. (n. 2 and backg'd); United States v. Williams, 880 F.2d 804, 806 (4th Cir.1989).
 
 The district court ruled as follows:
 
 31
 The defendant pled guilty to possession with intent to distribute crack cocaine, 22.95 grams was [sic] found in her hotel room which she shared with her co-conspirator or partner Robert Manuel, and she is chargeable with the entire amount for guideline purposes.
 
 
 32
 We agree with the ruling of the district court. Overton pled guilty to 22.95 grams, and even if she did not plead guilty to that amount, she is chargeable with that amount under the Guidelines. The district court did not err in imposing a sentence based upon the amount of 22.95 grams.
 
 
 33
 Finally, Overton attacks her sentence because the district court refused to give her a two-level reduction in her offense level pursuant to Sec. 3E1.1 of the Guidelines based upon her acceptance of responsibility. Overton points to the fact that she pled guilty to Count Four promptly and that she assisted authorities in Philadelphia in investigating drug offenses there. The court refused to grant the reduction based on the following rationale:
 
 
 34
 As pointed out by the government, withdrawal from criminal conduct is certainly a factor for the Court to consider, and I would consider it to be highly inappropriate to give her acceptance of responsibility when she was out on bond and engaged in a separate and independent operation of a criminal nature and the Court believes even with the dropping of the Connecticut charges that there is reliable information that could be produced to this court which would demonstrate by at least a preponderance of the evidence that she was engaged in criminal conduct at the time of her arrest and apprehension on May 24th in Hartford.
 
 
 35
 Section 3E1.1 of the Guidelines directs the district court to grant a two-level reduction if the defendant has accepted responsibility. This court has repeatedly held that whether to apply Guideline Sec. 3E1.1 is a factual issue which we review under a clearly erroneous standard. United States v. White, 875 F.2d 427, 431 (4th Cir.1989); United States v. Apple, 915 F.2d 899, 913 (4th Cir.1990); United States v. Cusack, 901 F.2d 29, 31 (4th Cir.1990). Further, as Application Note 5 of the Commentary to Sec. 3E1.1 states and we have held, the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility" and his "determination ... is entitled to great deference on review." See White, 875 F.2d at 431; Cusack, 901 F.2d at 31.
 
 
 36
 Subsection (c) of Sec. 3E1.1 states that "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right." Thus, Overton is not entitled to a reduction based upon the fact that she pled guilty to Count Four.
 
 
 37
 The Commentary to Sec. 3E1.1 sets out a non-exclusive list of factors for the court to consider in determining whether a defendant has accepted responsibility, including voluntary termination or withdrawal from criminal conduct or associations. Sec. 3E1.1 comment. (n. 1(a)). The district court found that Overton's criminal conduct while out on bond showed that she did not accept responsibility for her conduct. We agree. Overton agreed to help authorities in Philadelphia, and at first she did so. However, she then became impossible to locate and was ultimately found in Connecticut pointing a sawed-off shotgun at police officers. These activities are not those of a person who has accepted responsibility for her previous criminal conduct. Rather, they indicate that Overton is willing to continue engaging in criminal conduct, even while out on bond awaiting sentencing. The district's court's determination that Overton was not entitled to a reduction under Sec. 3E1.1 was not clearly erroneous.
 
 
 38
 The district court correctly decided the above issues and sentenced Overton to 121 months imprisonment. We affirm that sentence.
 
 III.
 
 39
 Manuel attacks his sentence on two grounds. First, he asserts that the district court erred in attributing to him the total amount of 22.95 grams of cocaine seized in room 112. Second, he asserts that the district court incorrectly calculated his criminal history category under Sec. 4A1.1(d).
 
 
 40
 Manuel's first assignment of error, like Overton's assignment on the same grounds, is without merit. Like Overton, Manuel pled guilty to possessing 22.95 grams of cocaine. For the reasons stated in our rejection of the same argument by Overton, we hold that the district court correctly attributed the full 22.95 grams of cocaine to Manuel.
 
 
 41
 Manuel also argues that the district court erred when it increased his criminal history category based upon the fact that Manuel was on probation at the time he committed the instant offense. Manuel asserts that he was not effectively on probation at the time of this offense because he was "in no way supervised" and he did not know that he was on probation.
 
 
 42
 Section 4A1.1(d) of the Guidelines provides that the district court should "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The Background Note to Sec. 4A1.1(d) explains that this section "implements one measure of recency by adding two points if the defendant was under a criminal justice sentence during any part of the instant offense."
 
 
 43
 The presentence report revealed that at the time of the instant offense, Manuel was under the supervision of the Philadelphia County, Pennsylvania Family Courts. Manuel argues that while he might have been "technically" on probation, he was not on probation in "any actual meaningful sense" that would trigger Sec. 4A1.1(d).
 
 
 44
 The Ninth Circuit addressed a similar issue in United States v. McCrudden, 894 F.2d 338 (9th Cir.1990), cert. denied, 110 S.Ct. 1534 (1990). There, the defendant committed a bank robbery while under an unsupervised two year probation based upon a conviction for driving on a suspended license. The Ninth Circuit affirmed the district court's decision to add two criminal history points pursuant to Sec. 4A1.1(d). Id. The court explained:
 
 
 45
 The guidelines make no provision for treating "unsupervised" probation as less than probation. Even if unsupervised, probation can be revoked and replaced by a sentence of greater punishment if further offenses are committed during the probationary period. The nonsupervisory status of a sentence of probation does not exempt it from section 4A1.1(d).... It is not unreasonable to enhance the punishment of an offender who again violates the law before fully serving his prior punishment. The inclusion of [the defendant's] probationary status in his criminal history score fits squarely within the language and purposes of Section 4A1.1(d). Id. at 339.
 
 
 46
 In the present case, Manuel's probation was unsupervised. However, he was most assuredly on probation in the "technical" sense as well as in the sense that Sec. 4A1.1 applied when he committed the instant offense. The inclusion of Manuel's probationary status in calculating his criminal history category fits squarely within the language of Sec. 4A1.1(d). The district court increased Manuel's criminal history category based on the fact that he committed the offense while on probation. We hold that it was not error to do so.
 
 
 47
 The district court ruled correctly on the above issues and sentenced Manuel to 121 months imprisonment. We affirm that sentence.
 
 IV.
 
 48
 To summarize, we find that the district court properly sentenced Overton and Manuel. The court correctly determined that both Overton and Manuel should be attributed with 22.95 grams of cocaine. The court correctly increased Overton's offense level based upon her possession of a firearm during the commission of a drug trafficking crime. The court also correctly refused to grant a downward adjustment for Overton based upon her acceptance of responsibility. Finally, the court correctly determined Manuel's criminal history level should be increased because of his probation status at the time of the offense. We find no error in the district court's rulings and therefore affirm the sentences of both Overton and Manuel.
 
 
 49
 AFFIRMED.