977 F.2d 574
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Alejandro Dejesus HERNANDEZ, a/k/a Kamarky, Defendant-Appellant.
 No. 91-5188.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 9, 1992
Decided: October 2, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-91-139-A)
 ARGUED: Clement Jay Robbins, IV, Outland, Gray, O'Keefe & Hubbard, Chesapeake, Virginia, for Appellant.
 Thomas More Hollenhorst, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 ON BRIEF: Richard Cullen, United States Attorney, Jay Apperson, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Alejandro DeJesus Hernandez was convicted by a jury on one count charging him with conspiracy to possess and distribute five kilograms of cocaine over a period from 1987-91, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Hernandez to 324 months' imprisonment. On appeal, Hernandez challenges his conviction, contending (1) that the district court erred in failing to grant his motion for judgment of acquittal because"the government's evidence established multiple conspiracies as a matter of law," and (2) that the district court erred in admitting hearsay testimony regarding the age of one of the co-conspirators and the fact that some of Hernandez' friends were suspicious of his former girlfriend because she was not Hispanic. In connection with his sentence, Hernandez challenges the district court's findings that five kilograms of cocaine were involved, that Hernandez was an organizer or leader, and that he used a firearm in furtherance of the conspiracy. After carefully reviewing the record, we find no reversible error and therefore affirm.
 
 
 2
 * Hernandez contends principally that the evidence does not support his involvement in one extensive conspiracy, as charged, and that the conduct of several persons in a separate and distinct conspiracy should not have been attributed to him. More particularly, he contends that he was not involved in the activities of William Simms and his co-conspirators, who were members of a separate drug distribution conspiracy.
 
 
 3
 At trial Hernandez based his defense on the theory of multiple conspiracies, and at his request the court instructed the jury that if there were separate conspiracies, Hernandez should be acquitted:
 
 
 4
 In order to sustain its burden of proof for [the conspiracy] charge, the Government must show that a single overall conspiracy as alleged in the indictment existed. Proof of separate or independent conspiracies is not sufficient.
 
 
 
 *
 
 **
 
 
 
 5
 Unless the Government proves the existence of the single overall conspiracy described in the indictment beyond a reason-able doubt, you must acquit the defendant.
 
 
 6
 The jury rejected the defense and found Hernandez guilty. Our review, therefore, is limited to determining whether substantial evidence was presented to the jury from which a jury could conclude, beyond a reasonable doubt, that one conspiracy existed. See United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986) ("If the jury is properly instructed, the finding of a single conspiracy must stand unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find.").
 
 
 7
 Evidence was offered at trial which showed that during the relevant period, Hernandez operated a cocaine distribution network in the Washington D.C. metropolitan area, including the District of Columbia, northern Virginia, and Maryland. Two apartments in the District of Columbia served as his primary distribution sites and he utilized two teenagers, his then-girlfriend, Mary Lisa Pratt, and Christina Yankey, both of whom were cocaine addicts, to assist in transporting cocaine from New York and to recruit cocaine customers for him.
 
 
 8
 In the summer of 1989, when William Simms lost his source of cocaine, Yankey introduced Simms to Mary Pratt, who in turn introduced Simms to Hernandez. At that time Simms had a"relationship" with Christina Yankey, and both Simms and Hernandez were supplying Yankey with cocaine. Simms was a cocaine addict who sold marijuana and cocaine to support his habit. Prior to June 1989, Simms had obtained cocaine from his roommate, Clifton Byars, who had obtained cocaine from another distributor, Dwight Gooden. In June, 1989, however, Simms and Byars were arrested, their drugs confiscated, and as a result, Simms lost his supply of cocaine.
 
 
 9
 Following the first meeting between Simms and Hernandez, Hernandez "fronted" a quarter-ounce quantity of cocaine to Simms. Simms kept less than half of the cocaine for his personal consumption and then, in order to repay Hernandez, sold the rest to Michael Upright and Richard White, Simms' former customers, who agreed to resell the cocaine for Simms. Hernandez continued to front cocaine to Simms, and when Simms had difficulty making repayment, Hernandez would front larger quantities to enable Simms to repay his debt. Throughout the period that Hernandez was supplying Simms, they maintained contact through Hernandez' beeper number.
 
 
 10
 From this evidence a jury could well conclude that when Simms lost his source of cocaine from Gooden and Byars, he replaced it with cocaine from Hernandez, and two earlier conspiracies thereafter operated as one. Once we are satisfied that the jury had ample evidence from which to reach that conclusion, we must accept the jury's verdict. See Glasser v. United States, 315 U.S. 60, 80 (1942); Urbanik, 801 F.2d at 695. Accordingly, we affirm the district court decision denying Hernandez' motion for judgment of acquittal.
 
 II
 
 11
 Hernandez also contends that Pratt's testimony in which she stated that Hernandez' Hispanic associates were suspicious of her because she was Caucasian was inadmissible and prejudicial hearsay, injecting a racial issue into the trial. On direct examination, Pratt had stated that Hernandez had threatened to kill her if she ever talked to the police about his activities. On cross-examination, Pratt was asked by defense counsel whether there was any reason for Hernandez to believe she would talk to the police, to which she could only offer speculation. In an effort to dispel the suggestion that Hernandez had no reason to threaten Pratt, on redirect the prosecutor elicited the testimony that she had heard that some of Hernandez' Hispanic associates were suspicious of her. In this circumstance we doubt that the testimony was hearsay. See Fed. R. Evid. 801(c). Nevertheless, its admission, if error, was harmless. It is related to an incidental relationship within the conspiracy that, in no respect, was central to the charges on which Hernandez was found guilty. See United States v. Grubb, 527 F.2d 1107, 1109-10 (4th Cir. 1975) (concluding that the admission of hearsay evidence was harmless where there was clearly sufficient evidence to support the conviction.).
 
 
 12
 For similar reasons, we reject Hernandez' challenge to the admission of evidence regarding the fact that Yankey was only fourteen years old during the conspiracy.
 
 III
 
 13
 Finally, Hernandez raises three separate challenges to the district court's application of the Sentencing Guidelines. He first argues that the government failed to meet its burden of proving by a preponderance of the evidence that the conspiracy involved five or more kilograms of cocaine, and that the district court's finding in that regard was, therefore, clearly erroneous. Applying U.S.S.G.s 2D1.1(c)(6) (effective November 1, 1989), the district court arrived at a base offense level of 32 based on the court's determination that the conspiracy involved the possession with intent to distribute "[a]t least 5 KG but less that 15 KG of Cocaine." See U.S.S.G. § 2D1.1(c)(6).
 
 
 14
 While there was no direct evidence as to the total quantities of cocaine in which Hernandez was dealing, in cases in which no drug seizure is made, the trial court must "approximate the quantity of the controlled substance." See U.S.S.G. § 2D1.4, Application Note 2 (providing, as an example, that the court may consider street prices, financial or other records, similar transactions by the defendant, and size or capability of the laboratory involved); United States v. Johnson, 943 F.2d 383, 387-88 (4th Cir.) (holding that in the absence of a seizure, the sentencing court may approximate the quantity of controlled substances as long as supporting factors are present and made the subject of findings), cert. denied, 112 S. Ct. 667 (1991).
 
 
 15
 In this case, Hernandez was involved in the active distribution of cocaine over a number of years, from several locations, to a large number of people. The quantities discussed during negotiations were in terms of kilograms; the amounts sold repeatedly each day were in terms of ounces; and the money seized at given points of time was in the thousands of dollars. Mary Pratt testified to observing two kilograms on a single occasion when she went to New York with Hernandez to purchase cocaine. She stated that Hernandez made ten trips to New York to resupply, and on one occasion she was asked to bring back from New York something less than one kilogram of cocaine. Pratt further testified that Hernandez kept one to two ounces of cocaine on hand in his apartment, and that he would often restock this supply two to three times per day as sales were made. There was also evidence that ten or more people purchased cocaine from Hernandez every day, and that he often sold in quantities ranging from onequarter to two ounces per person. Finally, large sums of drug money, jewelry and equipment were seized, representing a large operation and a high level of cash flow. At different times, $5,000 was seized from Hernandez' car in a New Jersey stop; $5,000 was seized from Simms' safe; and $10,000 was seized in an apartment in Maryland. Hernandez' whole operation was connected by a beeper system and its cocaine supply was supported by trips to New York, Florida, and the Dominican Republic.
 
 
 16
 Simple mathematical calculations demonstrate that the district court was not clearly erroneous in finding by a preponderance of the evidence that the conspiracy involved at least five kilograms. See 18 U.S.C. § 3742(e) (a reviewing court "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts"); United States v. White, 875 F.2d 427, 431 (4th Cir. 1989) ("Where an issue is primarily a factual one, the district court resolution of the issue will not be disturbed unless clearly erroneous.").
 
 
 17
 Hernandez next maintains that the district court's decision to increase his offense level by four points based upon his role as an organizer or leader of five or more persons under U.S.S.G. § 3B1.1(a) was clearly erroneous. Again, the facts of this case amply demonstrate the court's finding. Hernandez exercised control over Pratt and Yankey, who, at Hernandez' request, transported drugs, found buyers for him, and assisted in concealing the nature of his operation. The court was also justified in finding that Hernandez exercised control over Simms, who purchased cocaine from Hernandez on a consignment basis, and White and Upright, both of whom sold cocaine for Simms. In light of the large scope of the operation and Hernandez' degree of participation in the conspiracy, we cannot conclude that the district court was clearly erroneous in enhancing Hernandez' sentence under U.S.S.G. § 3B1.1(a) as an organizer or leader.
 
 
 18
 See United States v. Fells, 920 F.2d 1179, 1182-1183 (4th Cir. 1990) (reviewing the district court's § 3B1.1 enhancement under a clearly erroneous standard), cert. denied, 111 S. Ct. 2831 (1991).
 
 
 19
 Finally, Hernandez argues that the district court erroneously enhanced his sentence for use of a firearm under U.S.S.G. § 2D1.1(b)(1), based upon the fact that Hernandez showed a handgun to Pratt at an early point in their relationship. He contends that the gun was shown to Pratt in a nonthreatening manner and that it was not used "to protect his own cocaine or otherwise further the aims of the conspiracy." The government argues that Hernandez possessed the weapon while he was giving cocaine to Pratt, which constitutes distribution, and thus "a dangerous weapon (including a firearm) was possessed" during the commission of the offense. See U.S.S.G. § 2D1.1(b)(1). Furthermore, the government argues that the weapon was actually used in furtherance of the conspiracy because it was intended to frighten Pratt and reinforce future threats that he would kill her if she ever talked to the police. The commentary to § 2D1.1 provides that the enhancement for weapon possession"should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3. Because the government's view is supportable on the record, we affirm the district court's upward adjustment. See White, 875 F.2d at 431 (applying clearly erroneous standard to factual determinations by the district court).
 
 
 20
 In summary, we find no reversible error with respect to either the conviction or sentence and therefore affirm the judgment of the district court.
 
 AFFIRMED