PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 02-4693

WILLIAM KISE, a/k/a Bill,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-01-375)

Argued: December 5, 2003

Decided: June 2, 2004

Before LUTTIG and GREGORY, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Vacated and remanded by published opinion. Judge Gregory wrote
the opinion, in which Senior Judge Hamilton joined. Judge Luttig
wrote a separate opinion concurring in the judgment.

---

## COUNSEL

**ARGUED:** Allen Bethea Burnside, Assistant Federal Public
Defender, Columbia, South Carolina, for Appellant. Dean Arthur
Eichelberger, Assistant United States Attorney, Columbia, South Car-
olina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United
States Attorney, Columbia, South Carolina, for Appellee.

**OPINION**

GREGORY, Circuit Judge:

William "Bill" Kise pled guilty to two counts of sexual exploitation of children. At sentencing, the district court applied multiple sentencing enhancements and sentenced the defendant to 365 months' imprisonment. On appeal, Kise's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), stating that, in his view, there were no meritorious issues for appeal, but raising three issues related to sentencing: (1) whether the district court erred in denying Kise credit for acceptance of responsibility; (2) whether the district court abused its discretion in departing upward on the ground that Kise's criminal history significantly under-represented his past criminal conduct; and (3) whether the district court abused its discretion in departing upward for extreme conduct. Having reviewed the entire record in accord with *Anders*, we scheduled the case for oral argument and directed counsel to focus on the first issue. At oral argument, Kise's counsel stated that despite his filing of an *Anders* brief, his further review of the first issue in preparation for argument led him to conclude that it is, in fact, a meritorious claim. We agree. While we find the last two *Anders* issues lack merit, we conclude that the district court erred in denying Kise credit for acceptance of responsibility.

I.

A.

Bill Kise is a 63-year-old pedophile who admits that he has had sexual contact with "several hundred" children throughout his lifetime. Kise has acknowledged his mental illness and has stated that he does not believe his condition is curable. Following his arrest and subsequent three-count indictment, charging him with two counts of sexual exploitation of children and one count of interstate transmission of child pornography, Kise pled guilty to one count of use of minors in the production of visual depictions of sexually explicit conduct and one count of permitting a minor over whom he had custody and control to be used in the production of visual depictions of criminally explicit conduct. 18 U.S.C. §§ 2251(a), 2251(b). After imposing

various sentencing enhancements under the United States Sentencing Guidelines, the district court determined Kise had a total offense level of 39 and criminal history category of I, and sentenced Kise to 240 months' imprisonment on count one and 125 months on count two, with the sentences to run consecutively for a total of 365 months, the upper limit of the applicable Guideline range. Additionally, the court sentenced Kise to a term of three years of supervised release.

Federal authorities began investigating Kise after the United States Secret Service received information from a confidential informant ("CI"), who had been arrested for receipt and possession of child pornography in January 2001. On April 30, 2001, federal agents conducted a search of Kise's home with his consent. Kise also engaged in voluntary discussions with the authorities in which he admitted that he had exchanged child pornography over the internet with the CI. Furthermore, Kise identified himself and two prepubescent boys (hereinafter "Child A" and "Child B") depicted in photos the government received from the CI. Kise knew each child's respective families, and Child B had been left alone in Kise's custody for extended periods during school vacations, while Child A had been left in Kise's custody on numerous occasions for shorter spans of time — typically evenings and weekends.[1]

During his conversation with the agents, Kise admitted having molested Child A and Child B, who were nine to ten years old during the period of abuse. He told the agents that he had taken thousands

---

[1]Indeed, Child B's mother admitted that she had participated in bondage acts with Kise, had observed child pornography pictures on his computer, and had been aware that Kise stored an assortment of chains, whips, ropes and other sexual toys in his home. Child B's mother was even aware that Kise tied up her son, which she referred to as "innocent child's play." Despite such knowledge and the fact that the mother maintains that her child is autistic, she allowed Kise to sleep with her son in her home, and granted Kise continuous access to her son, who traveled from the Midwest to visit Kise on three separate occasions from 1999-2001.

Kise admitted that between August 2000 and February 2001, he spent 115 days with Child A, having sexual contact with the boy between twenty and thirty times.

of pictures of the children, depicting his sexual abuse of the children, as well as photos of Child A and Child B engaged in sexual activity with each other. Kise told the agents that he stored the images in his computer, and also had three web sites on which he posted photos of the children. Kise proceeded to describe each of the photos presented to him by the federal agents which had been recovered from the CI's computer.

The photos themselves are extremely graphic and exploitive; as the district court recognized at sentencing, they depict humiliating and degrading conduct toward children. Kise photographed the boys while they engaged in oral sex with one another, or performing oral sex on him. In some photos, Kise was shown touching and penetrating the children's rectums. In other photos, Kise showed the boys bound or tied up in intricate knot patterns ("dcsn1773.jpg" and "dcsn1772.jpg"), or wearing other devices associated with bondage and sadomasochism such as chain collars or small metal rings through which the boys' penises and scrotums passed. Specifically, photos submitted at sentencing showed, a child's penis and scrotum tightly bound with twine ("tie up [child], age 9.jpg"), a child with duct tape applied to his buttocks so as to expose his rectum ("ducktape.jpg"), a child with red marks from spanking on his bare buttocks ("northwestern.jpg"),[2] a child with a bite mark on his buttocks ("clear hole and bite.jpg"). In yet another photo, Kise wrote a message in marker to one of his pedophile friends on the child's buttocks ("himikey.jpg"), while in another he wrote "my little hole" on the child's buttocks with arrows pointing toward the boy's anus. Kise distributed these and other photographs to various friends in electronic format.

### B.

Following Kise's entry of his plea, a Presentence Investigation Report ("PSR") was prepared. The Probation Officer ("PO") calculated a base offense level of 27, U.S.S.G. § 2G2.1(a), for each count. The PSR recommended that these bases be increased four levels because the victims were younger than twelve years old, *see* U.S.S.G.

---

[2]One of the children reported that Kise spanked him with a paddle called "Northwestern."

§ 2G2.1(b)(1), and recommended two-level increases because the minors were in Kise's supervisory control, *see* U.S.S.G. § 2G2.1(b)(2). In addition, the PSR recommended two-level increases pursuant to U.S.S.G. § 3A1.1(b)(1) because Child B was unusually vulnerable. Thus, the PSR calculated the adjusted offense level for each count as 35, and the total offense level increased to 37 because there were multiple-counts. *See* U.S.S.G. § 3D1.4. Additionally, the PSR recommended that, pursuant to U.S.S.G. § 3E1.1(a)-(b), Kise receive a three-level reduction in offense level for his acceptance of responsibility. Finally, the PO found that Kise had zero criminal history points, giving him a criminal history category of I.

Thus, the PSR recommended that Kise be sentenced using a total offense level of 34 and a criminal history category of I, which would have yielded a guideline range of 151-188 months' imprisonment. However, the PSR detailed two factors which could warrant departure. First it stated that, pursuant to U.S.S.G. § 4A1.3(e), upward departure could be warranted because Kise's criminal history category under-represents the seriousness of his criminal history and the likelihood that he would commit further crimes.[3] Additionally, it

---

[3]The PSR detailed that in 1966, Kise had been charged with four counts of "lewd assault" in Florida, and in November 1966, Kise was committed to a state hospital as a "sexual psychopath," meaning that he "appeared to be suffering from a mental disorder." He was released from the hospital in August 1967, on the ground that he had recovered from the psychopathic conditions. In 1971, Kise was admitted to the State Hospital in South Carolina pursuant to a court order to undergo a psychological examination stemming from a charge of contributing to the delinquency of a minor. The conduct in question was that Kise had attempted to sodomize his neighbor's son, and the investigation of that crime revealed that Kise had sodomized other boys in the neighborhood.

Further, the report stated that Kise enlisted in the Army in 1961, and during his enlistment and after his discharge in 1964, Kise abused children while involved in the Boy Scouts. Kise stated that he enjoyed being a scoutmaster because it gave him power over children. He described being sexually active with several children entrusted to his care while affiliated with the organization, and estimated that he took advantage of hundreds of boys. The PSR details that his 1971 psychological report related that Kise "voluntarily talks about his pederastic incarnations and his involvement with little boys" and stated that he engaged in such activities while supervising scouts and while serving in the Army in Germany.

noted the possibility of an enhancement pursuant to U.S.S.G. § 5K2.8, governing conduct that is "unusually heinous, cruel, brutal or degrading to the victim."

At sentencing, the district court imposed both the departure and the enhancement. Despite the PO's recommendation and the government's lack of objection, the district court did not apply the three-level reduction for acceptance of responsibility. Therefore, the district court imposed sentence by using a total offense level of 39 and a criminal history category of II, yielding a sentencing range of 292-365 months. The district court sentenced Kise to 240 months on count one and 125 months on count two, to run consecutively, with a term of three years of supervised release thereafter. This appeal followed.

II.

At oral argument, Kise's counsel contended that the district court erred in denying his client a three-level reduction of offense level for acceptance of responsibility under the United States Sentencing Guidelines § 3E1.1(a)-(b) (2001). The Guidelines provide for a two-level reduction in offense level where the defendant "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). If a defendant qualifies under § 3E1.1(a), his or her offense level is 16 or greater, and the defendant has assisted authorities by (1) timely providing complete information to the government concerning his or her involvement in the offense; or (2) timely notifying authorities of his intention to plead guilty, thus allowing the government to conserve resources that would be expended on trial, the offense level is to be decreased by one additional level. *Id.* § 3E1.1(b).

We review the district court's decision to deny a reduction in the offense level based on the defendant's acceptance of responsibility for clear error. *United States v. Pauley*, 289 F.3d 254, 261 (4th Cir. 2002), *cert. denied*, 123 S. Ct. 1007 (2003); *see also United States v. Holt*, 79 F.3d 14, 17 (4th Cir. 1996) (per curiam).

A guilty plea does not automatically entitle a defendant to a reduction for acceptance of responsibility. *See United States v. Harris*, 882 F.2d 902, 906 (4th Cir. 1989) ("A district court is not obligated to grant an unrepentant criminal a two-step reduction in return for

grudgingly cooperating with authorities or merely going through the motions of contrition."). Rather, the district court is to evaluate the defendant's acts and statements to determine whether the defendant has accepted responsibility for his or her criminal conduct. *See United States v. Gordon*, 895 F.2d 932, 936 (4th Cir. 1990); *United States v. White*, 875 F.2d 427, 431-32 (4th Cir. 1989). "[I]n order to receive a reduction under § 3E1.1 for acceptance of responsibility, the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *United States v. May*, 359 F.3d 683, 693 (4th Cir. 2004) (internal quotation marks and citations omitted). The commentary to the guideline at issue notes that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, cmt. n.5 (2001); *accord White*, 875 F.2d at 431.

In this case, the PSR recommended that Kise receive a three-level reduction for acceptance of responsibility. The PO detailed that Kise readily and immediately confessed to the federal authorities in April 2001. As detailed above, Kise admitted to his life history as a criminal sexual predator, rather than merely confessing to the crimes for which he was being investigated. Furthermore, the PSR reported that Kise remarked, "I feel terrible. This has ruined my life. I went through this when I was a kid. I didn't intend to harm them, but I am sure I did." Finally, the PSR detailed that Kise was admitted to the residential sex offender treatment program ("SOTP") of the Federal Correctional Institution at Butner, North Carolina for a psychiatric evaluation, and that Kise sought treatment of his pedophilia.[4] The government did not object to the recommendation for acceptance of responsibility.

Despite the fact that Kise's post-offense conduct substantially conformed to many of the factors listed as "appropriate considerations" in determining whether an individual qualifies for the acceptance of

---

[4]In 1990, the Butner SOTP for men was established. The program's goal "is to reduce risk of recidivism by teaching offenders to manage their sexual deviance through cognitive-behavioral, self-management, and relapse prevention techniques." Federal Judicial Center, *Special Needs Offenders Bulletin* No. 3, *Sex Offenders* 14 (Sept. 1998).

responsibility reduction under the guidelines, the district court did not grant the reduction. *See, e.g.*, U.S.S.G. § 3E1.1, cmt. n.1(a) ("truthfully admitting the conduct comprising the offense(s) of conviction"); *id.* cmt. n.1(b) (voluntary withdrawal from criminal conduct or associations); *id.* cmt. n.1(d) ("voluntary surrender to authorities promptly after commission of the offense"); *id.* cmt. n.1(e) ("voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense"); *id.* cmt. n.1(g) ("post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)"). Instead, during the sentencing colloquy, the district court questioned Kise regarding what he had told prison psychologists regarding his pedophilic beliefs. Consistent with Kise's past mental health evaluations, *supra* note 3, the Butner psychiatrists diagnosed Kise as a pedophile and concluded that he suffered from depression. The evaluation revealed that Kise "identified a system of beliefs which are commonly seen in individuals engaged in sexual activity with minors." Specifically, Kise told the psychiatrist that he believed that "children had a sexuality and should be able to consent to sexual activity. He expressed a belief that a child's ability to consent to sexual activity began around the age of 10."[5]

During the plea colloquy, in turning to the issue of acceptance of responsibility, the district court seized upon Kise's statements from his psychiatric sessions at Butner and stated: "Now, on acceptance of responsibility, Mr. Kise, do you believe that a child at age ten has the ability to give consent to an adult to have sex with him?" J.A. 72. This exchange followed:

---

[5]The PSR also notes that during the Butner evaluation, Kise expressed "he did not feel that he had harmed the children 'that much' by his sexual activity with them." Kise expressed that the harm to the children "came not from his involvement in sexual activity, but from his being caught and involving them in the legal proceeding, subsequent counseling and having that part of their lives exposed." However, the PSR also details that during a subsequent interview with a PO in September 2001, Kise claimed the Butner psychologist misconstrued his explanation, and "[Kise] acknowledged that he did believe that the children had been harmed by his sexual activity with them and that he was not justifying his sexual activity with them in any way."

| The Defendant: | Your Honor, I just— |
|---|---|
| The Court: | Yes or No? |
| The Defendant: | Yes, Your honor. |
| The Court: | You think that a ten year old child can consent with an adult to have sex? |
| The Defendant: | As our society knows it, no. |
| The Court: | As you know? |
| The Defendant: | Within me, yes, I know. I believe it. |
| The Court. | You lose acceptance of responsibility. It is clear to me you have not accepted the illegality of what you were doing. Let me say, your comment right there is completely consistent with what you say in the report. You lose acceptance of responsibility. You do not get acceptance of responsibility. |

J.A. 72.

From this colloquy, it is clear that because Kise believed that children could consent to sexual conduct, the district court found, *ipso facto*, that Kise had not accepted responsibility for his conduct. We find that determination clearly erroneous. To hold otherwise would punish defendants like Kise for acknowledging their disorders and for seeking the very counseling and rehabilitation they require. Essentially, it would establish a *per se* rule that individuals similarly situated to Kise who suffer from, but are not yet cured of, mental disorders cannot qualify for the acceptance of responsibility reduction; we cannot square such a determination with the guideline. *See* U.S.S.G. § 3E1.1, cmt. n.1(g) (stating that an appropriate consideration in determining whether a defendant should receive the reduction is whether he or she has engaged in "post-offense rehabilitative efforts" such as counseling).

The district court presented Kise with what was ultimately a Hobson's choice: answer honestly and in accord with the psychiatrist's report and be denied acceptance of responsibility, or answer dishonestly and in a manner contrary to the report and be denied acceptance of responsibility and possibly incur an enhancement for obstruction of justice. The same scenario would confront any pedophile similarly situated to Kise, and is thus akin to a categorical bar against any such individual receiving the acceptance of responsibility reduction. The *Diagnostic and Statistical Manual of Mental Disorders IV* ("*DSM*") defines pedophilia as a paraphilia — that is, a disorder causing "clinically significant distress or impairment in social, occupational, or other important areas of functioning." American Psychiatric Association, *DSM-IV-TR* 535 (4th ed. 2000). It notes that individuals with pedophilia "generally report an attraction to children of a particular age range," and — completely consistent with Butner's diagnosis of Kise — it states that when pedophiles act on their urges with children, they commonly rationalize the sexual experience, reasoning "that they have 'educational value' for the child, that the child derives 'sexual pleasure' from them, or that the child was 'sexually provocative'—themes that are also common in pedophilic pornography." *Id.* § 302.2 at 571; *see also* J.A. 120 (during allocution, Kise stated "in talking to my psychiatrist about [pedophilia], he brought out the fact that generally people who are pedophiles have a tendency to place the age of consent on what they are attracted to.").

In short, the district court punished Kise for admitting to and attempting to remedy his mental disorder. Kise did not challenge the fact that what he did was legally wrong,[6] rather he repeatedly expressed guilt and remorse.[7] In frank terms, Kise admitted the deep

---

[6]To be clear, Kise's belief that the children could and did consent did not rest on the legal definition of consent. *See* J.A. 76-80. Rather, Kise was referring to a more abstract philosophical issue — regardless of how warped or perverse the philosophy — of whether he believed the boys had the capacity to willingly choose to participate in, or object to, the sexual conduct in which they engaged.

[7]*See, e.g.*, J.A. 117 ("I'm terribly sorry for what I have done. [Pedophilia] is not something in my life that I ever wanted. It is something I hated. It accelerated. For 26 years[,] I did work and fight the urge to control it and I was able to control it. . . . I don't believe there is a cure

scope and hold of his mental illness — the PSR noted that he fought against and wanted to seek help for the disorder throughout his lifetime,[8] and actively sought help at Butner and elsewhere to remedy the condition. Kise's response to the district court's question regarding children's ability to consent, though undeniably perverse to objective individuals without his paraphilia, was an honest response in accord with his disorder. In this light, even Kise's alarming declarations that children can consent to sexual activity amount to "statements regarding his motivation [that] are relevant in that they shed light on the sincerity of an asserted acceptance of responsibility." *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995).

While we find Kise's statements regarding consent objectively misguided and disturbing, they do not mean that Kise failed to accept responsibility for his offenses. To the contrary, Kise's statements and actions in this case following his investigation by the federal government and eventual detention demonstrate his willingness to assist law enforcement and to submit to mental health treatment. On this record, it is clear that Kise actively took the initial steps to control, if not wholly eradicate, his disorder thereby minimizing the possibility of recidivism.[9] *See* Federal Judicial Center, *Special Needs Offenders*

---

for pedophilia."); *id.* ("I blame myself for every bit of [my conduct]."); *id.* at 118 (stating he had suffered from "terrible judgment"); *id.* at 120 ("I am attracted to nine and ten year olds. I'm sorry for that. I don't know how I could — you know, why me? I asked that question many times. I would be happy to be anything else."); *id.* at 123 ("I am the blame for whatever I do. I still question my own mind. They said I am sane. I don't believe I'm sane when it comes to those things [pedophilia and molestation]. I do believe I am a psychopath."); *id.* at 123 ("I'm guilty and I will take whatever you want to do to me. I do that here today because I deserve it."); *id.* at 124 ("I was truly and deeply sorry for these criminal acts that I have committed. I am especially sorry as well as deeply ashamed for the terrible embarrassment and the great sadness I brought upon these special boys."); *id.* at 129 ("I do accept responsibility totally. I have already asked God to forgive me and he has. I will deal with what I have to deal with as a criminal for the rest of my life.").

[8]The record indicates that Kise's pedophilic conduct stopped for a period of approximately 25 years and resumed in 1999.

[9]As the Seventh Circuit has remarked, per Judge Posner, the purpose of § 3E1.1 is not simply to induce guilty pleas and spare government

*Bulletin* No. 3, *Sex Offenders* 6 (Sept. 1998) (stating sexual deviance is treatable and that "offenders can learn to control, if not eradicate, their deviant interests and behavior," but for treatment to work "the offender must be an active participant in identifying risky behavior and in developing coping strategies to address them"). Without disputing that Kise's criminal conduct is of the most abhorrent type society knows, we also recognize that Kise immediately admitted to the wrongfulness of his conduct when approached by the authorities and has continued to do so, he turned over the instrumentalities of his criminal conduct, and he has sought help to take steps toward reforming his behavior in the future. All of these facts support our view that the district court clearly erred in finding that Kise did not accept responsibility for his crime. While we understand the district court's expression of repugnance at Kise's statements that he believes children can consent (though Kise admits that they cannot legally consent to sexual contact), to deny Kise and similarly situated pedophiles the acceptance of responsibility reduction in such an instance would render § 3E1.1 wholly inapplicable to an entire class of criminals. Such a categorical bar cannot be reconciled with the above-discussed purposes of the guideline, and moreover such a result would ironically serve to discourage honesty and full disclosure from pedophiles as they take the first step toward rehabilitation and possible reintegration into society — thus also undermining the very purposes and goals of the Butner SOTP, *see supra* note 4. As Kise's counsel persuasively queried at oral argument, if such a bar were in place, how could a competent attorney implore a client suffering from a mental disorder to go to Butner or another correctional institution for a mental evaluation if the attorney knows that his client's attempts to comply with the authorities and conform to the full disclosure policies in § 3E1.1 will only be used against the client?

Were we to hold that it is not clear error to deny acceptance of responsibility in this instance, it would create a perverse incentive within our case law. We would unintentionally encourage pedophiles

---

expenses, but is also aimed "to reflect the reduced risk of recidivism of a defendant who by facing up to the wrongfulness of his conduct takes the first step to better behavior in the future." *United States v. Lopinski*, 240 F.3d 574, 575 (7th Cir. 2001) (citations omitted).

similarly situated to Kise to refrain from telling authorities about their past crimes and predilections and from seeking the mental health care they severely require. Instead, they would be motivated to take their chances at trial, thus increasing administrative costs, preventing the offenders from obtaining the mental help they require — which, in turn, should translate into lower incidents of recidivism and greater protection of society as a whole — and, perhaps most importantly, putting great strain on the victims who have already suffered so deeply. This we cannot do.

### III.

For these reasons, we hold that the district court's denial of a three-level reduction for Kise's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)-(b) was clearly erroneous.[10] Accordingly, we vacate the district court's sentence and remand for resentencing in a manner not inconsistent with this opinion.

*VACATED AND REMANDED*

LUTTIG, Circuit Judge, concurring in the judgment:

I do not join the majority opinion, because I do not believe that the rationale for its holding is one that is permissible under the guidelines. I do, however, believe that it was error for the district court to deny Kise the acceptance of responsibility reduction, given Kise's post-arrest conduct. In my view, that conduct satisfied the legal requirements set forth in the guidelines for the acceptance of responsibility reduction. I do not believe that Kise's responses to the court's questions during the plea colloquy and sentencing, *made under the partic-*

---

[10]We find no merit in the other two issues raised in the *Anders* brief. The court did not abuse its discretion in departing upward from Criminal History Category I to Criminal History Category II on the basis that Category I under-represented Kise's admitted history of child molestation and predatory conduct. Likewise, we find no error in the district court's upward departure for extreme conduct under U.S.S.G. § 5K2.8. Kise's conduct in this case is the very epitome of that which is "unusually heinous, cruel, brutal, or degrading to a victim." U.S.S.G. § 5K2.8. Accordingly, we otherwise affirm the district court's imposition of sentence.

*ular circumstances of contrition and remorse here*, evidence a failure to accept responsibility within the meaning of the guidelines.