**Mohamed Hassan SOLIMAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil Action No. 2:08cv278. Original Criminal No. 2:06cr169.**

United States District Court, E.D. Virginia, Norfolk Division.

June 24, 2009.

Kevin M. Schad, Esquire, Schad & Schad, Lebanon, OH, William M. Powers, Esquire, Law Offices of Steve C. Taylor PC, Suffolk, VA, for Petitioner.

Robert J. Krask, Assistant United States Attorney, Norfolk, VA, for Respondent.

## MEMORANDUM OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on petitioner Mohamed Hassan Soliman's ("Soliman") motion to vacate, set aside, or correct his sentence, filed under 28 U.S.C. § 2255. The government submitted a response in opposition, to which Soliman replied. The court held an evidentiary hearing on June 8, 2009, on the narrow issue of whether Soliman asked his counsel to file an appeal.[1] Both parties submitted additional materials to the court prior to the hearing, and this matter is now ripe for decision. For the reasons set forth below, the court **DENIES** petitioner's motion.

### I. Factual and Procedural History

#### A. Plea Agreement and Statement of Facts

On February 1, 2007, Soliman entered into a written plea agreement and pled guilty to Count Two of a three-count indictment. Count Two charged Soliman with Structuring Financial Transactions, in violation of 31 U.S.C. § 5324(a)(3) and (d)(2). Soliman was represented by two attorneys, Benjamin Mason ("Mason") and Franklin Swartz ("Swartz").

Soliman initialed each page of the written plea agreement and signed at the end. (Resp. Ex. 1, Plea Agreement, at 1–12.) Paragraph 1 of the plea agreement describes the maximum penalties for the offense, including ten years in prison. *Id.* at 1. Paragraph 2 states that Soliman is "sat-

isfied that [his] attorney had rendered effective assistance." *Id.* at 2. According to Paragraph 4, Soliman understands "that the Court has the jurisdiction and authority to impose any sentence within the statutory maximum," if comporting with 18 U.S.C. § 3553(a), and that "any estimate of the advisory sentencing range ... from defendant's counsel, the United States, or the Probation Officer, is a prediction, not a promise[.]" *Id.* at 3. Paragraph 4 further explains "the United States makes no promises or representations concerning what sentence the Defendant will receive," and that Soliman "cannot withdraw a guilty plea based upon the actual sentence." *Id.* Paragraph 5 waives "the right to appeal the conviction and any sentence within the statutory maximum[.]" *Id.* Both of Soliman's attorneys, Mason and Swartz, initialed each page of the plea agreement and signed at the end. *Id.* at 1–12.

With counsel, Soliman also initialed and signed a statement of facts that asserted the United States could have proved the elements of his offense and certain relevant conduct beyond a reasonable doubt. (Resp. Ex. 2, Statement of Facts, at 1–7.) Specifically, Soliman admitted that the United States could prove that he structured $1,404,314 in cash deposits between March 7, 2005, and September 25, 2006, to evade currency-transaction reporting requirements, and that this deposit activity fell within a pattern of illegal structuring that involved more than $100,000 in a twelve-month period. *Id.* at 5–6.

In the agreed statement of facts,[2] Soli-

---

[1] Resolution of this disputed fact required a credibility determination. *See United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000); *see also Raines v. United States*, 423 F.2d 526, 530 (4th Cir.1970); 28 U.S.C. § 2255 ("unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of

fact and conclusions of law"). As stated in the court's order dated May 13, 2009, no other issue required a hearing under 28 U.S.C. § 2255.

[2] Soliman, both of his attorneys, and the United States signed and agreed to the statement of facts at the plea colloquy proceeding, and the statement of facts was filed at that time. (Resp. Ex. 3, Tr. of Guilty Plea, at 21–22.)

man further admitted that the United States could prove that the Internal Revenue Service ("IRS") had employed Soliman as a Revenue Officer for about fourteen years before he structured the deposits,[3] and that Soliman knew currency-transaction reports were required for cash transactions over $10,000. *Id.* at 6. Finally, Soliman admitted the United States could prove that he had advised a cooperating witness to structure cash deposits over $10,000 to avoid the currency-transaction report and IRS scrutiny. *Id.*

## B. Hearing on Guilty Plea

Both of Soliman's attorneys, Mason and Swartz, represented him at the court's hearing on the guilty plea. (Resp. Ex. 3, Tr. of Guilty Plea, at 1–23.) After being placed under oath, Soliman told the court that he understood "the penalty and the seriousness of it under the law." *Id.* at 4. The court advised Soliman that it was "only bound by the statutory maximum penalty of ten years in jail," and specifically warned, "I make no promise to you today except that your sentence could not exceed ten years in jail." *Id.* at 5–6. Soliman said that he understood, and indicated that he realized the court would take all of his relevant criminal conduct into account, not just that of the crime of conviction. *Id.* at 6.

Soliman told the court that no one had made any promise of leniency or any other promise, except what was contained in the plea agreement, in exchange for his guilty plea. *Id.* at 12–13. The court reiterated that "any recommendation about your sentence from the prosecutor, from your attorneys, from the probation officer, or anyone, is only a recommendation and is not binding upon the court," to which Soliman replied, "[y]es, I understand." *Id.* at 13. Soliman also said he understood when the court emphasized that he could not withdraw his guilty plea if "somebody's prediction about your sentence proves to be wrong," and that the court's "only promise" was a sentence not exceeding ten years in jail. *Id.*

Both Mason and Swartz told the court that they had reviewed the indictment and plea agreement with Soliman. *Id.* at 8–10. Soliman agreed that he had a "full opportunity to discuss the case with [his] attorneys" and that he was "satisfied with their representation." *Id.* at 13–14. Mason and Swartz informed the court that they had reviewed the advisory Guidelines and the sentencing factors with Soliman. *Id.* at 16. After Soliman heard the court review the advisory Guidelines and sentencing factors, he declined to ask any questions when the court gave him the opportunity to do so. *Id.* at 16.

The court also reviewed Soliman's waiver of appeal with him. Mason and Swartz informed the court that they had discussed the waiver of appeal with Soliman; Soliman also told the court that he had discussed his waiver of appeal with his attorneys, and that he understood, pursuant to his plea agreement, he did not have an absolute right to appeal the court's sentence. *Id.* at 16–17. During the plea colloquy, Soliman told the court he was pleading "freely and voluntarily" because he felt he was "in fact, guilty of the offense." *Id.* at 20. Soliman was later asked if he agreed with the Statement of Facts, and replied, "[y]es, Ma'am." *Id.* at 22. At the conclusion of the plea colloquy, the court gave Soliman a final chance to change his mind after entering the guilty plea: the court specifically again asked if he wanted to plead guilty, and Soliman replied, "[y]es, Ma'am." *Id.*

---

**3.** The presentence report reflects that Soliman has a bachelor's degree from college.

(*See also* Resp. Ex. 5, Tr. of Cont'd Sentencing, at 212.)

## C. Sentencing Proceedings

Both Mason and Swartz represented Soliman at the sentencing hearings, held on May 23, 2007, and June 11, 2007. In its position paper and at the hearings, the government objected to a reduction for acceptance of responsibility under Section 3E1.1(a) of the United States Sentencing Guidelines ("U.S.S.G.").

To receive the full three-point reduction, "defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *United States v. Kise*, 369 F.3d 766, 771 (4th Cir.2004) (internal quotation and citation omitted). A defendant must accept responsibility for *all* criminal conduct, not just part of it. *See United States v. Gordon*, 895 F.2d 932, 936 (4th Cir. 1990). Although a guilty plea shows acceptance of responsibility, it "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n. 3. Thus, the district court must "evaluate the defendant's acts and statements to determine whether the defendant has accepted responsibility for his or her criminal conduct." *Kise*, 369 F.3d at 771. A defendant's statements about the motive for committing a crime are "relevant in that they shed light on the sincerity of an asserted acceptance of responsibility." *Id.* at 774 (internal quotation and citation omitted). "The sentencing judge is in a unique position to evaluate a defendant's

acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n. 5.

In this case, the presentence report ("PSR") recommended a three-level reduction for acceptance of responsibility. (PSR ¶¶ 19–21.) In support, the PSR stated that Soliman admitted his guilt in court and appeared to have accepted responsibility for his criminal conduct. *See id.* at ¶ 19. Notably, the PSR relied on Soliman's claim that he structured these funds because he had a discrimination suit pending against the Internal Revenue Service ("IRS"), and did not wish to draw attention to his business. *Id.*

While the government initially supported a three-level reduction based on Soliman's admission of guilt and explanation of motive, the government discovered evidence revealing a different, more sinister motive for the crime. When Soliman claimed that he structured cash deposits to avoid drawing the IRS's attention to his business during his discrimination suit, the government did not think Soliman had structured cash deposits to hide money from the IRS. The IRS's Criminal Investigative Division later discovered, however, that Soliman's company, Safa Investment, LLC, had under-reported an estimated $391,995 in gross receipts on its Virginia State Tax return in Taxable Year 2005. According to the IRS, this under-reporting of income shows that Soliman was trying to hide money from the IRS to protect his income from tax liability.[4] Further, Soli-

---

4. The government specifically stated that:

Here, the defendant denied the motivation for the underlying offense was related to protecting income from tax liability. This denial was made to the investigating agents. Further, the defendant told the probation officer the motivation for trying to avoid the IRS' attention was the benign desire to not draw attention during a pending discrimination suit against the IRS. He made no mention that he was also under reporting

the business income or otherwise undermining the transparency of the system for his own personal gain. Even when the Government indicated to the defendant, through counsel, that it was seeking the company's federal and state tax returns to evaluate the accuracy of the reporting, the defendant did not disclose that the gross receipts were under reported. Given the defendant's unwillingness to admit that corporate tax evasion, and by extension his own personal gain as a corporate officer,

man would have benefitted personally from this under-reporting, as he had 100% ownership of the corporation's stock. After learning that Soliman misrepresented his motive, the government objected to a reduction for his acceptance of responsibility.

The court heard evidence on this issue, including the testimony of an IRS agent, one of Soliman's employees, an accountant, and Soliman's tax preparer. Terry Knight, Soliman's tax preparer, testified that he relied on Soliman's information, which he assumed was very reliable because Soliman had worked for the IRS. (Resp. Ex. 5, Tr. of Cont'd Sentencing, at 141.) Cynthia McClenny, one of Soliman's employees, testified that Soliman's tax loss was actually $45,076, not the $3,339 he originally reported on his 2005 corporate tax return. *Id.* at 144–53. Thus, she testified that Soliman did not have any tax liability for his corporation in 2005, and could have amended his return to reflect his greater loss. *Id.* at 152. But on cross-examination, McClenny admitted that she had inaccurately calculated because of missing information and poor math, and that, with correct math, Soliman's corporation had indeed earned taxable income. *Id.* at 154–69.[5]

After hearing argument from both parties and reciting its factual findings, the court denied Soliman a reduction for acceptance of responsibility. *Id.* at 186–90. The court recalculated the offense level to 24, with an advisory Guidelines range of 51–63 months. *Id.* at 190. Further, the court found, at the conclusion of two days of evidentiary hearing, that Soliman had lied to IRS agents about his motive and had frivolously contested that he under-reported his income; the court then applied an obstruction-of-justice enhancement to his Guidelines calculation. *Id.* at 191–97. Swartz objected to the courts's Guidelines findings on acceptance of responsibility and obstruction of justice, arguing that an acceptance reduction was appropriate, and an obstruction enhancement was not. *Id.* at 194, 197–98. Swartz argued that the tax issue was not frivolously contested, as evidence was offered that Soliman at least tried to file a proper tax return, even if the court did not accept such evidence. *See id.* at 198.

Addressing the sentencing factors under 18 U.S.C. § 3553(a), the government noted the prolific structuring with a large amount of money over an extended period of time, Soliman's long employment at the IRS and familiarity with its requirements, and his structuring advice to another person. *Id.* at 198–203. Mason then argued at length to emphasize mitigating factors, requesting a sentence substantially below the Guidelines range. During allocution, Soliman then openly denied knowing of this IRS reporting requirement before his arrest. *Id.* at 211–12. He declared, "I'm not lying. I would like to take the stand and say this is true, but [my counsel] said no." *Id.* at 211. Soliman continued, "I am not going to cheat on my tax return, and I will make sure that everything are correct in my tax return." *Id.* at 212. Blaming his co-defendant for mistakes, Soliman asserted, "I don't know about this. I have

---

was a motivation for the offense, it appears he has failed to meet his burden on this issue of acceptance.
(Gov't's Position Paper 4–5.)

**5.** Soliman had planned on testifying about overseas money wires, but the court warned that he could open the door to damaging questions and, if he lied, to an obstruction-of-justice enhancement, apart from other rea-

sons before the court that could warrant this enhancement. (Resp. Ex. 5, Tr. of Cont'd Sentencing, at 170–71.) Mason agreed that he had "talked to Mr. Soliman many, many times about the potential bad things that could happen if he takes the stand." *Id.* After consulting with counsel further, Soliman agreed under oath that he should not take the stand, and thus did not testify. *Id.* at 172.

no evidence. [My co-defendant] knows. This is his business. He never came. He never filed." *Id.* at 213. Soliman described his actions as a "big mistake" and swore that he did not "intend to do anything wrong." *Id.* at 214–15.

After hearing Soliman's statement, the court said, "this case just gets worse for Mr. Soliman by the moment." *Id.* at 215. The court recognized that Soliman's assertions contradicted Paragraphs 6, 7, and 8 of the statement of facts, to which accuracy Soliman had sworn under oath. Finding that Soliman's statements in allocution materially denied his criminal conduct, the court stated it would now have given him an obstruction-of-justice enhancement, if it had not already done so. *Id.* at 216–17.

The court addressed the sentencing factors at length, including how Soliman lied under oath, and sentenced him to seventy-eight (78) months incarceration and three (3) years supervised release. *Id.* at 217–20. The court sentenced him "to the maximum guideline sentence with great trepidation, considering his misrepresentations to the court." *Id.* at 220.

### D. Post–Sentencing Proceedings

No appeal was filed, but on June 13, 2008, Soliman filed a motion under 28 U.S.C. § 2255[6] based on ineffective assistance of counsel. On November 10, 2008, the government responded in opposition, to which Soliman replied on December 4, 2008.

On December 30, 2008, this court ordered an evidentiary hearing, which both parties requested, to address the credibility issue of whether Soliman asked his counsel to note an appeal. On February 2,

2009, the government asked for an extension of time for scheduling a hearing, which the court granted. On April 27, 2009, Soliman sought to expand the scope of the evidentiary hearing, which the government opposed. On May 13, 2009, the court issued an order stating that it had fully reviewed the record in this case, and found no other issue that required a hearing under 28 U.S.C. § 2255. At the June 8, 2009, evidentiary hearing on whether Soliman asked Mason[7] to note an appeal. As addressed *infra* at Section II.B., the court finds that Soliman did not request Mason to note an appeal.

### II. Analysis

Under 28 U.S.C. § 2255, a prisoner may challenge a sentence imposed by a federal court. Section 2255 permits a challenge if: (1) the sentence violates the Constitution or the laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255.

While comprehensive relief is available under § 2255, collateral review under this section does not replace direct appeal, which is the "normal and customary method" of correcting trial errors. *Sunal v. Large,* 332 U.S. 174, 177, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). Accordingly, a petitioner generally "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief based on trial errors raised for the first time in a § 2255 motion. *United States v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). To obtain § 2255 relief, a petitioner bears the burden of proof

---

6. Soliman signed his § 2255 motion and all other submissions under penalty of perjury, as provided by 28 U.S.C. § 1746.

7. Soliman alleges this ground of ineffective assistance only against Mason, although he

was represented by both Mason and Swartz. As a result, the parties submitted an agreed order to excuse Swartz from this evidentiary hearing, which the court entered on May 21, 2009.

by a preponderance of the evidence. *See Vanater v. Boles,* 377 F.2d 898, 900 (4th Cir.1967).

This § 2255 motion brings three claims of ineffective assistance of counsel. To prove ineffective assistance of counsel, a petitioner must show that (1) the attorney's performance was deficient; and (2) the deficient performance prejudiced the petitioner by undermining the reliability of the judgment against him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A *Strickland* claim fails if the petitioner does not satisfy both the performance prong *and* the prejudice prong. *Id.* at 700, 104 S.Ct. 2052. Thus, a court may consider only one prong of the test if the petitioner does not carry the burden of proof. *See id.*

Under the first prong of *Strickland,* counsel's performance is measured against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." *Savino v. Murray,* 82 F.3d 593, 599 (4th Cir.1996). Assessing counsel's performance requires viewing the challenged conduct from counsel's perspective at the time, while indulging a "strong presumption that counsel's challenged conduct falls within the wide range of reasonable professional assistance[.]" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Indeed, *Strickland* imposes a "rigorous" and "highly demanding" standard that requires

showing the "gross incompetence" of defense counsel. *Kimmelman v. Morrison,* 477 U.S. 365, 381–82, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

To prove prejudice under the second prong of *Strickland,* a petitioner must show "a reasonable probability" that—but for counsel's deficient performance—the outcome of the trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A petitioner "must demonstrate that the error worked to his actual and substantial disadvantage, not merely that the error created a possibility of prejudice." *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir.1997) (internal quotation and citation omitted).

Soliman contends that his defense counsel[8] (1) failed to provide effective assistance during the plea process; (2) failed to provide effective assistance at sentencing (for not challenging the government's evidence that Soliman under-reported his corporate tax return, for failing to argue mitigating factors, and for failing to object to the probation officer's recommended base-offense level); and (3) failed to file a requested notice of appeal. The court has fully reviewed the record in this case, and has held an evidentiary hearing on the only issue that required a credibility determination: whether Soliman asked his counsel to note an appeal. A hearing was unnecessary to address the remaining issues raised in Soliman's § 2255 motion.[9]

---

**8.** Soliman had two attorneys—Mason and Swartz—but only alleged ineffective assistance against Mason in his original § 2255 motion. After the government pointed out that Soliman could not meet the first prong of *Strickland* unless *both* his attorneys deficiently performed, Soliman responded that his ineffective-assistance-of-"counsel" claim broadly encompasses all attorneys who represented him, including Swartz. (Reply 2–3.) Soliman's reply also alleges that Swartz was ineffective "to the extent that he is responsible for preparing arguments and representing the pe-

titioner." *Id.* at 3. Swartz was specifically excluded from the third claim of failing to note an appeal. *See supra* note 7.

**9.** *See* 28 U.S.C. § 2255 (providing that the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *Blackledge v. Allison,* 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (noting that the judge who presided over petitioner's trial and sentencing typically receives the § 2255 motion, "the judge's recollection

## A. Petitioner Did Not Receive Ineffective Assistance During the Plea Process

■ Soliman contends that he pled guilty because Mason told him that he would not go to prison. In his affidavit, Soliman asserts that Mason told him that if he pled guilty, he "would not face any prison time, but instead would receive a sentence of probation or suspended sentence." (Mem. in Supp. Ex. A at 1.) Without that assurance, Soliman asserts that he "would not have pled guilty to the plea agreement which was offered[.]" *Id.* Soliman attaches two other affidavits in support. First, Amber Giordano avers that, while cleaning Soliman's convenience store, she overheard Mason telling Soliman that he would get a suspended sentence, not jail time. (Mem. in Supp. Ex. B at 1.) In the second affidavit, Lisa Ruppert asserts that she heard Mason tell Soliman that if he was convicted, he would spend time in prison, then laughed and reassured Soliman that he wouldn't have to go to jail. Neither affidavit states that the listener heard the entire conversation between Soliman and Mason, that the listener heard any other conversation between Soliman and Mason, or that the listener understood the context of the overheard comments.

In his affidavit, Mason states that he and Swartz met with Soliman several times, both at Soliman's store and at Swartz's office. (Resp. Ex. 6 at 2.) Mason attests that both he and Swartz advised Soliman, and that Soliman—after reviewing the evidence and options with counsel—decided on his own to plead guilty. *Id.* Mason avers that "at no time did Mr. Swartz or I indicate to Mr. Soliman that he would not be sentenced to an active

term of incarceration." *Id.* According to Mason, he told Soliman that they "would argue to the Court for no active term of incarceration," but advised him "in no uncertain terms that the sentencing guidelines would call for active incarceration," and that he and Swartz could provide "no guarantee the Court would go below the sentencing guidelines." *Id.* at 2–3.

Despite any advice or opinion that Mason or Swartz may have given Soliman about whether he would serve jail time, the court specifically and repeatedly advised Soliman to the contrary during his plea colloquy, and the plea agreement specifically stated otherwise. Soliman then made sworn representations to the court that he knew he could receive a prison sentence of up to the statutory maximum of ten years, before he pleaded guilty pursuant to the plea agreement.

On February 1, 2007, Soliman initialed and signed the written plea agreement that explained the maximum penalties and the court's role in determining his sentence. (Resp. Ex. 1, Plea Agreement, at 1–12.) Paragraph 1 describes the maximum penalties for the offense, including ten years in prison. *Id.* at 1. Paragraph 4 indicates "that the Court has the jurisdiction and authority to impose any sentence within the statutory maximum," if comporting with 18 U.S.C. § 3553(a), and that "any estimate of the advisory sentencing range ... *from defendant's counsel,* the United States, or the Probation Officer, is a prediction, not a promise[.]" *Id.* at 3 (emphasis added).

Further, during the plea colloquy, the court told Soliman several times that he could not rely on any predictions of his

---

of the events at issue may enable him summarily to dismiss a § 2255 motion"); *Raines v. United States,* 423 F.2d 526, 531 (4th Cir. 1970) (permitting district courts to deny § 2255 motions without a hearing if they

"state only legal conclusions with no supporting factual allegations," which are not supplied by "vague, conclusory or palpably incredible" allegations).

sentence and promised only that the court would not exceed the statutory maximum for imprisonment. Specifically, the court stated it was "only bound by the statutory maximum penalty of ten years in jail," and warned Soliman, "I make no promise to you today except that your sentence could not exceed ten years in jail." (Resp. Ex. 3, Tr. of Guilty Plea, at 5–6.) The court reiterated that "any recommendation about your sentence from the prosecutor, *from your attorneys,* from the probation officer, or anyone, is only a recommendation and is not binding upon the court," to which Soliman responded, "[y]es, I understand." *Id.* at 13 (emphasis added). Soliman also stated he understood when the court emphasized that he could not withdraw his guilty plea if "somebody's prediction about your sentence proves to be wrong," and that the court's "only promise" was a sentence not exceeding ten years in jail. *Id.*

■ "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of State of Md.,* 956 F.2d 1290, 1299 (4th Cir.1992). Soliman's allegations that he would not have pled guilty if he had known of the possibility of jail time directly contradict his sworn representations to the court, and he cannot now attribute the decision to plead guilty to his counsel's advice. Under these circumstances, Soliman has not shown that his counsel's performance was deficient, nor has he shown any prejudice to his ultimate decision to plead guilty.

## B. Petitioner Did Not Ask Counsel to Note an Appeal

■ When counsel does not file a requested appeal, the Fourth Circuit finds deficient performance and presumes prejudice, regardless of whether the appeal would have succeeded. *See United States v. Peak,* 992 F.2d 39, 41–42 (4th Cir.1993); *Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Thus, the two *Strickland* prongs are satisfied, so long as the instructions for counsel to file a notice of appeal were "specific," *Flores–Ortega,* 528 U.S. at 477, 120 S.Ct. 1029, and "unequivocal," *United States v. Poindexter,* 492 F.3d 263, 271 (4th Cir. 2007).[10] Even if a defendant enters into a plea agreement that knowingly and voluntarily waives the right to appeal, counsel may still be ineffective if failing to note a requested appeal. *See United States v. Parra,* 238 F.3d 417, 2000 WL 1714181, at *1 (4th Cir. Nov. 16, 2000). When counsel does not file a requested appeal, the petitioner merits relief in the form of a belated appeal. *See United States v. Taylor,* 414 F.3d 528, 533 (4th Cir.2005).

Soliman contends that he merits relief under § 2255 because Mason ignored his specific and unequivocal request to note an appeal.[11] In an affidavit, Soliman stated: "I immediately contacted my attorney Mr. Mason, and informed him that I wanted to file an appeal." (Mem. in Supp. Ex. A at 1.) While under oath at the evidentiary hearing on this issue,[12] Soliman clarified that he never used the word "appeal." Soliman testified that he left Mason a voi-

10. Counsel's failure to consult with a defendant about appealing may itself constitute deficient performance. *See Flores–Ortega,* 528 U.S. at 478, 120 S.Ct. 1029. Soliman has not claimed that his counsel failed to consult with him about an appeal, and the court finds from Soliman's sworn testimony that Soliman discussed waiving appeal with his counsel. (Resp. Ex. 3, Tr. of Guilty Plea, at 16–17.)

Moreover, Soliman's claim is that he did request an appeal, but his counsel failed to note the appeal.

11. This claim is only against Mason, and not against Swartz. *See supra* note 7.

12. *See supra* note 1.

cemail on June 12, 2007, asking Mason to file a "motion for reconsideration." Soliman explained that he thought a motion for reconsideration was the same as an appeal.[13] On July 15, 2007, Soliman also dictated a letter to Mason that asked him for "further assistance for a retrial, modification, and a reconsideration of sentence." (Gov't Ex. 3, Evidentiary Hearing, at 2.) While Soliman had previously claimed he "had his family contact counsel and inform him of his request," (Mem. in Supp. 3), he admitted under oath at the evidentiary hearing that he did not know if any of his family members—who live in Egypt—or any other third party, actually contacted Mason. No evidence of any such contact was offered prior to or at the evidentiary hearing, and none was submitted after the hearing, despite an opportunity to do so.

In an affidavit, Mason stated that "Mr. Soliman never requested that I note an appeal[.]" (Resp. Ex. 6 at 5.) According to Mason, Soliman asked about his waiver of appeal when Mason visited Soliman at his holding cell after sentencing.[14] (Resp. Ex. 6 at 4–5.) During the visit, Mason confirmed that Soliman had waived his right to appeal his sentence, and, at Soliman's request, discussed the merits of filing a motion to reconsider. *Id.* Soliman had not requested an appeal or a motion to reconsider when Mason left the cell. *Id.* at 5. Under oath at the evidentiary-hearing, Mason testified that the June 12, 2007, voicemail from Soliman again asked about the advisability of filing a motion to reconsider. On June 13, 2007, Mason wrote Soliman a letter acknowledging the voicemail, explaining the court's rationale for the seventy-eight month sentence, and advising against filing a motion to reconsider. (Resp. Ex. 6 at Attach. A.) At the evidentiary hearing, Mason maintained under oath that Soliman never requested or even alluded to a desire to file an appeal at any point during the course of his representation. Mason testified that he would have certainly filed an appeal, if Soliman had requested one, despite Mason's view of any chance of success on appeal.

As Soliman claimed that he requested an appeal, and Mason countered that Soliman did not make this request, the court makes a credibility determination, finding facts by a preponderance of the evidence. *See Witherspoon,* 231 F.3d at 926–27, *see also Raines,* 423 F.2d at 530. The court finds Mason's testimony credible, contrary to that of Soliman. Thus, the court finds that neither Soliman, nor anyone on Soliman's behalf, asked Mason to file an appeal, much less made this request in "specific" and "unequivocal" terms.

■ While the parties agree that Soliman twice raised the issue of filing a motion for reconsideration, this is not the same as asking counsel to note an appeal. A request for a motion for reconsideration cannot be viewed as a "specific" and "unequivocal" request for an appeal, because these are two distinct actions for seeking review of a criminal judgment. *See United States v. Artis,* 319 Fed.Appx. 255, 256 n. * (4th Cir.2009) (treating criminal defendant's appeal and motion for reconsideration as two separate legal actions). Rather than serving as an appeal, a motion for reconsideration *prevents* the need for an appeal by giving the district court an opportunity to correct its own mistakes. *See, e.g., Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998) (addressing purposes of a motion for reconsideration). The voicemail that Soliman left for Mason on June 12, 2007, asked about a motion for reconsideration,

13. *But see infra* note 15.

14. Soliman claimed at the evidentiary hearing that this meeting never occurred. The court does not find this testimony to be credible.

which would seek the court's review of its own rulings. Soliman did not suggest that he wished to seek review by an appellate court. Similarly, Soliman's letter of July 15, 2007, asked Mason for "further assistance for a retrial, modification, and a reconsideration of sentence" (Gov't Ex. 3 at 2); Soliman was again seeking relief from the district court, rather than asking for an appeal to a higher court. Soliman has not submitted *any* evidence that meets his burden of showing, by a preponderance of the evidence, that he asked Mason "specifically" and "unequivocally" to file an appeal.[15]

## C. Petitioner Received Effective Representation During His Sentencing Proceedings

### 1. Counsel Was Not Ineffective For Failing to Object to Petitioner's Base–Offense Level

■ Soliman alleges his counsel provided ineffective assistance in two ways by not objecting to his base-offense level at sentencing. First, neither Mason nor Swartz objected to the use of U.S.S.G. § 2S1.3(b)(2), which increased the base-offense level by two levels because Soliman engaged in a pattern of unlawful activity involving more than $100,000 in twelve months. Soliman mistakenly contends that this enhancement is only for terrorist activity, as opposed to his structuring activity. Case law supports that the unlawful activity punished by U.S.S.G.

2S1.3(b)(2) is *structuring* in excess of $100,000 in a twelve-month period—not some other unlawful activity. *See United States v. Valdes–Guerra*, 758 F.2d 1411, 1414 (11th Cir.1985) (interpreting 31 U.S.C. § 5322(b), which uses the same language); *see also* U.S.S.G. § 2A1.1 (noting that the enhancement under U.S.S.G. § 2S1.3(b) gives weight to 31 U.S.C. § 5322(b)). Soliman admitted to engaging in a pattern of unlawful activity involving over $100,000 in a twelve-month period by signing and agreeing to the plea agreement and the statement of facts. Both documents contained language that unequivocally support an enhancement under U.S.S.G. 2S1.3(b)(2). Thus, neither Mason nor Swartz had any grounds to object to this enhancement.

Challenging another aspect of counsel's failure to object to his base-offense level, Soliman claims ineffective assistance because neither Mason nor Swartz challenged the probation officer's failure to use the "safe harbor" under U.S.S.G. § 2S1.3(b)(3). If all conditions are met, this "safe harbor" would have capped Soliman's base-offense level at 6. One of these conditions is that U.S.S.G. § 2S1.3(b)(2) does *not* apply. As noted above, this provision *does* apply because of Soliman's admissions in his plea agreement and statement of facts. Accordingly, neither Mason nor Swartz provided ineffective assistance

15. In point of fact, Soliman did not "specifically" and "unequivocally" ask Mason to file a motion for reconsideration. Based on Mason's credible testimony, Soliman never asked for a motion for reconsideration in his June 12, 2007, voicemail, but merely inquired into the *advisability* of filing this motion. Further, when Soliman asked Mason to file a motion for reconsideration in his letter dated July 15, 2007, he was well aware that the deadline for filing an appeal had already passed. After sentencing Soliman on June 11, 2007, the court specifically advised Soliman that he had

ten days from that date to appeal. (Resp. Ex. 5, Tr. of Cont'd Sentencing, at 222.) Under oath at the evidentiary hearing, Soliman candidly admitted that he had heard and understood this statement from the court. Thus, regardless of whether Soliman believed that he was requesting an appeal by asking Mason to file a motion for reconsideration on July 15, 2007, Soliman knew that any appeal would be untimely. As previously noted, Soliman is an educated person and a former IRS agent. *See supra* note 3 and accompanying text.

by not objecting to Soliman's base-offense level, as it was calculated correctly.

## 2. Counsel Was Not Ineffective By Deciding to Challenge the Government's Accounting Evidence

 Next, Soliman claims ineffective assistance during sentencing because Mason "engaged the Government in a battle over accounting methods, which ultimately had the result of doubling (or more) the length of the Petitioner's sentence." (Mem. in Supp. 5.) To support this allegation, Soliman contends the government "did not indicate it was going to seek a different Guidelines enhancement, or otherwise change the Guidelines determination," after telling defense counsel that tax evasion was a motive for Soliman's structuring. *Id.* In fact, the government *did* tell Soliman that it sought to change his Guidelines calculation after uncovering the motive evidence, as the government's position paper objected to a reduction for acceptance of responsibility for this very reason. (Gov't's Position Paper at 3–5.)

Only by challenging the government's evidence could Mason or Swartz attempt to salvage a reduction for acceptance of responsibility, as Soliman had the burden of proving his eligibility for this adjustment. While Soliman claims he would have received the adjustment, if his counsel had not contested the government's view of the facts, the contrary is true. The court agreed with the government by stating that "a defendant cannot receive acceptance of responsibility and try to hide his motive" for his crime, and finding that Soliman did "not meet his burden to show acceptance of responsibility." (Resp. Ex. 5, Tr. of Cont'd Sentencing, at 190.) Moreover, Mason testified that Soliman himself sparked the "battle over accounting methods" when he "requested that we call Cynthia McClenny and Terry Knight regarding financial information," which his counsel did. (Resp. Ex. 6 at 4.)

Mason's attack of the government's accounting evidence on his client's behalf was hardly deficient representation, much less "gross incompetence," which Soliman must show to meet the first prong of *Strickland. Kimmelman,* 477 U.S. at 381–82, 106 S.Ct. 2574. Nor did Swartz, a criminal defense attorney with lengthy and extensive trial experience, act deficiently when supporting Mason's decision to put on evidence at the sentencing hearing. Further, Soliman has not shown prejudice under *Strickland's* second prong because the court based its sentence on Soliman's own statements and misstatements. The court imposed the sentence after finding that Soliman had failed to accept responsibility, had obstructed justice, and had lied to the court—not because Soliman's counsel challenged the government's evidence.

## 3. Counsel Was Not Ineffective in Arguing Mitigating Factors

 Finally, Soliman alleges ineffective assistance because neither Mason nor Swartz argued at sentencing that, on a nationwide level, structuring cases about hiding illegal assets usually do not yield lengthy sentences. (Mem. in Supp. 7.) But Mason did argue for mitigation based on Soliman's age, marital status, six children, lengthy employment with the IRS, poor business skills, and lack of criminal history. (Resp. Ex. 5, Tr. of Cont'd Sentencing, at 203–10.) Since Soliman had already spent time in local jail awaiting sentence, Mason argued that Soliman had been adequately deterred by that experience. *Id.* at 210. Mason also contended that the advisory Guidelines were too high for the offense conduct, especially because Soliman's codefendent received a one-year sentence for tax evasion. *Id.* at 206–07.

Thus, Mason adequately addressed the factors that the court must consider under 18 U.S.C. § 3553(a), including the history and characteristics of the defendant, the

nature and circumstances of the offense, the need for adequate deterrence, the sentencing range for this category of offense and defendant, and the need to avoid unwarranted sentence disparities. Counsel need not argue every angle of mitigation—such as nationwide statistics—especially when these figures do not accurately reflect Soliman's unique position as someone who worked for the IRS for fourteen years, sought to evade taxes, helped another person avoiding IRS scrutiny, and lied to the court. Swartz did not provide ineffective assistance by relying on Mason's argument based on the factors of 18 U.S.C. § 3553(a). Both Mason and Swartz met an objective standard of reasonableness during the mitigation arguments at Soliman's sentencing.

### III. Conclusion

Soliman fails to meet the first *Strickland* prong, because none of his allegations show that either Mason or Swartz fell short of an objective standard of reasonableness, in light of the circumstances at the time of their conduct. *See Savino*, 82 F.3d at 599. Soliman has offered no evidence of either attorney's "gross incompetence" to rebut the "strong presumption that counsel's challenged conduct falls within the wide range of reasonable professional assistance." *Kimmelman*, 477 U.S. at 381–82, 106 S.Ct. 2574; *see also Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Soliman has also failed the second *Strickland* prong, because he has not shown any prejudice that resulted and affected the outcome of his sentence. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

For the reasons set forth above, the court **DENIES** petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Final Order to counsel for the parties and to Soliman's trial counsel, Mr. Mason and Mr. Swartz.

**IT IS SO ORDERED.**